CARDIAC PACEMAKERS, INC., Guidant Sales Corporation, and Eli Lilly and Company, Plaintiffs,

v.

ST. JUDE MEDICAL, INC., Pacesetter, Inc., Ventritex, Inc., and John Does 1–10, Defendants.

No. IP96–1718–C–H/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 2, 2001.

Timothy J. Malloy, McAndrews, Held, Malloy, Ltd., Chicago, IL, Richard R. McDowell, Hill, Fulwider, McDowell, Funk, etc., Indianapolis, IN, John R. Schaibley, III, Baker & Daniels, Indianapolis, IN, James Hughes, Sommer & Barnard, Indianapolis, IN, David T. Kasper,

Locke & Reynolds LLP, Indianapolis, IN, for plaintiffs.

Dennis R. Salmon, Gibson, Dunn & Crutcher, Palo Alto, CA, Jay G. Taylor, Ice Miller, Indianapolis, IN, Jeffrey M. Olson, Lyon & Lyon, Los Angeles, CA, Michael Rackman, Gottlieb, Rackman & Riesman, New York City, for defendants.

## ENTRY ON SUMMARY JUDGMENT MOTIONS ADDRESSING EFFECT OF ARBITRATION DECISION

HAMILTON, District Judge.

In this patent infringement case, defendants have asserted a license defense. Defendants claim that when they acquired assets of the Telectronics Group in 1996, they acquired a license to practice the inventions claimed in the patents in suit here. This action was stayed for about two years while a dispute over that purported transfer was arbitrated. The final arbitration award by the Honorable Charles Clark, former Chief Judge of the United States Court of Appeals for the Fifth Circuit, held that the attempted transfer supporting defendants' license defense was "null and void." Both sides have moved for summary judgment on the effect of the arbitration award.

### Background

In 1994, plaintiffs Eli Lilly and Company and Cardiac Pacemakers, Inc. (CPI), as part of a cross-licensing agreement resolving earlier patent litigation, granted a license to Telectronics Holdings Ltd. and affiliated entities (collectively, Telectronics) to practice the patents in suit here. Under the terms of plaintiffs' agreement with Telectronics, unilateral assignment or transfer of the licensing rights granted to Telectronics was limited to affiliates, but with the following exception:

> [N]otwithstanding the provisions of this Section, the Agreement can be transferred with the sale of all of the voting stock of the TELECTRONICS GROUP or with the sale of substantially all of the assets of the TELECTRONICS GROUP or as part of any offering of the shares of the TELECTRONICS GROUP. Such sale shall not affect Cardiac Pacemaker's, Inc. rights under the Agreement.

Telectronics Agreement § 12.03. The Telectronics Agreement also provided for arbitration of disputes between the parties. The arbitration provision states:

> Any dispute that arises in connection with The Agreement including whether royalty payments are due under any sublicense, shall be resolved by binding Alternative Dispute Resolution ("ADR") in accordance with 35 USC 294 and in the manner described in Exhibit B and judgment upon the award made by the Arbitrator may be entered by any Court having jurisdiction thereof. No punitive damages shall be recoverable by any party in such a proceeding. If the arbitrators determine that a third party licensor or other third party is a necessary party to any such dispute, such dispute shall not be governed by this paragraph.

Id., § 11.02.

In 1996, a wholly owned subsidiary of defendant St. Jude Medical, Inc. purchased assets of Telectronics and then transferred those assets to defendant Pacesetter, Inc., which is also a subsidiary of St. Jude. Defendants contended that the transaction amounted to a "sale of substantially all of the assets of the TELECTRONICS GROUP" so as to effectively transfer to Pacesetter the licenses that Lilly and CPI had earlier granted to Telectronics. The transfer of those licenses was a major reason, perhaps the dominant reason, for the entire transaction. Plaintiffs immediately disputed the assertion

that the licenses had been transferred to Pacesetter. This litigation resulted.

In a separate case before the United States District Court for the District of Minnesota, Telectronics sought to compel arbitration of the dispute over whether the licenses were effectively transferred in the Telectronics transaction. The district court declined to compel arbitration, but on May 4, 1998, the Eighth Circuit reversed and ordered arbitration, including arbitration of whether Pacesetter should be a party to the arbitration. *Telectronics Pacing Systems, Inc. v. Guidant Corp.,* 143 F.3d 428 (8th Cir.1998).

The parties selected the Honorable Charles Clark, former Chief Judge of the United States Court of Appeals for the Fifth Circuit, to serve as the arbitrator for patent issues, including those relating to the transfer of the licenses. On November 30, 1998, Judge Clark issued an "Interim Award" deciding that the validity of the transfer could and should be arbitrated without including the nominal transferee, Pacesetter, as a necessary party. Judge Clark explained in the Interim Award:

> In the circumstances presented here of a challenge to the validity of a transfer to another party, the third party/necessary party issues could be viewed as circular. If the challenged transfer is invalid, no third party is necessary. If there is a valid transfer, the transferee is a necessary party to a determination of disputed issues involving the rights transferred. However, if the question involves a determination of disputed issues between the parties to the Agreement as to the scope of the assets trans-

ferred, to hold that the vendee in any sale of patent rights or other assets is always a necessary party would cause § 11.02 of the Agreement to negate the ADR provisions in Exhibit B. This reasoning would deny arbitration to the most sensitive of patent disputes which could arise. To give meaning to all parts of the Agreement in the present situation, only the validity of the transfer will be decided in this arbitration.

From that point forward, Pacesetter was excluded from the arbitration. On July 10, 2000, Judge Clark issued his Final Award in the arbitration and held: "The attempted assignment and transfer of patent licenses is null and void."

In this lawsuit, both sides have moved for summary judgment on the effect of the final arbitration award on defendants' license defense. Defendants contend they are free to litigate the validity of the transfer because they were not parties to the arbitration. Plaintiffs contend that defendants are bound by the arbitration award and that, in any event, the undisputed facts show that Judge Clark was right in holding the attempted transfer null and void. The material facts are not disputed; the briefs are extensive.[1]

### Discussion

Plaintiffs' motion for summary judgment on the effect of the arbitration is granted; defendants' motion is denied. Plaintiffs prevail as a matter of law on defendants' third affirmative defense, which pleads a license as a defense to the claims of patent

---

1. More detailed accounts of the underlying Telectronics Agreement and the arbitration dispute may be found in the Eighth Circuit's opinion and in this court's earlier entries. See *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,* 1997 U.S. Dist. LEXIS 8951 (S.D.Ind. Apr. 30, 1997); *Guidant Corp. v. St. Jude Medical, Inc.,* 1997 U.S. Dist. LEXIS 8953 (S.D.Ind. Apr. 30, 1997). The record on the motions addressed in this entry consists of Docket Nos. 433, 434, 435, 441, 442, 443, 444, 451, 452, 453, 478, 479, 480, 481, 484, 485, 486, 520, 521, and 530.

infringement. The court reaches this result on several independent grounds.

■ First and most simply, without worrying about defendants' absence from the arbitration as parties, Judge Clark was right on the merits of the transfer issue. He applied the plain language of an integrated contract that was negotiated painstakingly between highly sophisticated parties and their lawyers. The undisputed facts show that defendants did not purchase "substantially all of the assets of the TELECTRONICS GROUP," as that term was defined in the license agreement. Defendants have not raised any issue of material fact.

Even if there were room to litigate the meaning of the contract on the merits, defendants must still fail in their attempt to transform the arbitration proceeding into a coin toss where the rules were equivalent to "heads I win, tails I don't lose."

■ The second ground for the court's decision is the doctrine of *res judicata*, which bars defendants' attempt to contest the license issue again. The undisputed facts show that defendants were in privity with Telectronics, which was a party to the arbitration. "Simply put, the doctrine of *res judicata* provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876).

■ To counter the effect of the arbitration and their relationship with Telectronics, defendants rely on 35 U.S.C. § 294(c), which provides in relevant part: "An award by an arbitrator shall be final and binding between the parties to the arbitration but shall have no force or effect on any other person." Defendants' reliance on the statute is not persuasive. This portion of § 294(c) must be read to apply to parties to an arbitration *and to others in privity with them.* See John B. Pegram, *An Analysis and Explanation of the Statutes Now Affecting Patent Arbitration,* 11 Am. Pat. L. Ass'n Q.J. 274, 281 (1983) (stating that § 294(c) should be interpreted to make arbitration binding on "[h]eirs, successors and assigns, and the like"). Otherwise a party who lost in arbitration (or who feared it might lose) could easily nullify the effect of the arbitration agreement and the arbitrator's decision by merely transferring or assigning the relevant rights, claims, or assets.

■ Third, the doctrine of judicial estoppel also applies to bar defendants' attempt to revisit the issues decided in arbitration. "The doctrine of judicial estoppel instructs that having obtained a judgment in a case on some ground a litigant cannot turn around and in another case seek a judgment on an inconsistent ground." *United States v. Newell,* 239 F.3d 917, 921 (7th Cir.2001); *Continental Illinois Corp. v. Commissioner of Internal Revenue,* 998 F.2d 513, 518 (7th Cir.1993). As the First Circuit explained in *Lydon v. Boston Sand & Gravel Co.,* the doctrine "should be employed when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage." 175 F.3d 6, 12–13 (1st Cir.1999), quoting *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987).

The parties have debated whether judicial estoppel is limited to situations in which the party to be estopped has won a judgment by taking a position inconsistent with its current position, as the Seventh Circuit said was required in *Newell*, 239 F.3d at 921–22. Whether a judgment is required does not matter here. Defendant Pacesetter was a party to and won a judgment in the Eighth Circuit litigation to compel arbitration of the validity of the license transfer to Pacesetter.

■ Fourth, the defendants also consented to have the license transfer issue decided conclusively by the arbitration, whichever way it turned out. That consent is established by their conduct in this case and in the Eighth Circuit litigation seeking the arbitration, and by their opposition to lifting the stay in this case after Judge Clark's interim award determined that Pacesetter would not be a party to the arbitration. In that successful opposition, defendants assured the court: "Now that they have finally and conclusively *lost* their argument as to the arbitrability of this dispute, plaintiffs must admit that the arbitration not only may, but *will*, decide whether the license in question has been transferred to Pacesetter. * * * Proceeding with this action … would run the risk of conflicting rulings on a whole host of issues, including the dispositive issue of whether defendants possess a license to the patents in suit." Def. Mem. of Feb. 2, 1999, at 10 (Docket No. 252) (emphasis in original). Defendants were correct then; the arbitration did conclusively decide whether the license in question had been transferred to Pacesetter.

Defendants bought some Telectronics assets, hoped the Lilly/CPI license would transfer, and fought tenaciously in several courts to enforce the arbitration provision of the Telectronics cross-licensing agreement. That arbitration provision that defendants fought to enforce, in the very contract defendants relied upon to support transfer of the licenses, could apply *only* if defendants were *not* ultimately parties to the arbitration. As Judge Clark recognized in his interim award, there has always been a circular relationship between the validity of the transfer and the necessity of including additional parties to the arbitration, which necessity would have had the effect of nullifying the arbitration provision. In other words, the arbitration clause that defendants fought so hard to enforce could be enforced only if defendants were *not* parties to the arbitration. Having succeeded in enforcing that arbitration clause under which they could not be parties to the arbitration, defendants should not be heard to complain now that they did not have an opportunity to be heard in the arbitration on the validity of the license transfer. See *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 167 (5th Cir.1998) (arbitration award bound non-party who had attempted to enforce the underlying agreement, which included arbitration term, against plaintiff); *Hughes Masonry Co. v. Greater Clark County School Building Corp.*, 659 F.2d 836, 838–39 (7th Cir. 1981) (party seeking to enforce contract with arbitration clause was equitably estopped from avoiding arbitration on theory that opposing party had not been party to underlying contract).

The defendants briefed the issue of collateral estoppel, but the court does not base its decision on collateral estoppel. Defendants' due process claims are—in light of the doctrines of *res judicata*, judicial estoppel, and consent—utterly without merit. Defendants wrote in their brief in opposition to plaintiffs' motion on the arbitration issue that plaintiffs' contention is "principally noteworthy for its audacity." Def. Br. at 1. The briefing on these mo-

tions reflected audacity, but not on the part of plaintiffs. Plaintiffs are entitled to judgment as a matter of law on defendants' third affirmative defense of a license to practice the inventions in question.

So ordered.