618 S.E.2d 506

**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS, a State Agency, Plaintiff Below, Appellant,**

v.

**Joyce L. ROBERTSON, et al., Defendants Below, Appellees.**

No. 31770.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 2005.

Decided May 10, 2005.

---

## Page 499

ertson, appellee/defendant below (hereinafter referred to as "Ms. Robertson"). Additionally, the circuit court's order was adverse to Ethel Erickson, an intervener. However, Ms. Erickson has not appealed the adverse decision. Here, DOT contends that the circuit court committed error in denying its motion for partial summary judgment. After thoroughly reviewing the briefs, the record designated for appellate review, and pertinent authorities, we affirm in part and reverse in part the lower court's ruling and remand this case for further proceedings consistent with this opinion.

Kathryn Reed Bayless, Bayless Law Firm, PLLC, Princeton, West Virginia, Attorney for Appellant.

Joseph S. Beeson, Kent J. George, Matthew S. Casto, Robinson & McElwee, Charleston, West Virginia, Attorneys for Appellee, Joyce L. Robertson.

DAVIS, Justice:

This appeal was filed by the West Virginia Department of Transportation, Division of Highways, appellant/petitioner below (hereinafter referred to as "DOT"), from an order of the Circuit Court of Logan County granting partial summary judgment[1] to Joyce L. Rob-

## I.

### FACTUAL AND PROCEDURAL HISTORY

On April 17, 2000, DOT filed an application in the circuit court seeking to condemn property[2] for highway construction purposes. The property was owned by Ms. Robertson.[3] The property in question consisted of approximately 6.873 acres from a parcel referred to as Parcel 8–1.[4] According to a plat that was attached to the deed of Parcel 8–1, that parcel consisted of approximately 11.08 acres.[5]

On May 10, 2000, Ms. Robertson filed an answer to the application. In her answer Ms. Robertson, among other defenses, denied

---

**1.** Throughout the proceedings below and in this appeal, the parties have characterized the motions as summary judgment. In fact, the motions were actually "partial" summary judgment motions because they did not include the coal mineral "damages" phase of the case which is set to be heard by a jury. Consequently, throughout this opinion we will refer to the motions as partial summary judgment motions. See Murphy v. Smallridge, 196 W.Va. 35, 36 n. 4, 468 S.E.2d 167, 168 n. 4 (1996) ("We are not bound by the label employed below[.]").

**2.** On the same day that DOT filed its condemnation application, it tendered unto the court, in compliance with W. Va.Code § 54-2-14a (1981) (Repl.Vol.2000), a check in the amount of $1,607,600.00 as the fair market value of the property. On the same day, the circuit court entered an order vesting defeasible title in the property to DOT.

**3.** Other parties were named as defendants in the application. Those parties apparently are no longer in the case and are not part of this appeal.

**4.** The relevant chain of title to Parcel 8–1 is as follows. Parcel 8–1 was owned by Ethel Erickson up until 1998. By deed dated March 16, 1998, Ms. Erickson conveyed Parcel 8–1 to Ohio Valley College. Subsequently, by deed dated July 14, 1998, Ohio Valley College conveyed Parcel 8–1 to Ms. Robertson for the sum of $100,000.00. Here, it has been alleged that Ohio Valley College acted merely as a "strawman" in the property conveyance. That is, for tax purposes, Ms. Erickson conveyed the property to Ohio Valley College with the intent that Ohio Valley College would convey the property to Ms. Robertson.

**5.** There was a second piece of property condemned, called Parcel 8–2, which consisted of 0.854 acre. Insofar as the issues presented in this appeal do not affect Parcel 8–2, we will not provide any further discussion about Parcel 8–2.

that the money tendered to the court represented the fair market value of the property. After a period of negotiation, Ms. Robertson and DOT reached an agreement that $1,999,950.00 would be fair compensation for the property, *excluding* costs for coal minerals underlying the property. The parties tendered their agreement to the circuit court. The circuit court accepted the agreement and, on April 10, 2001, entered a partial final order in the case. The order stated that the "case shall remain open so that the matter of the coal mineral interests may be negotiated and/or litigated at a later date."

After entry of the partial final order, the parties engaged in a period of discovery pertaining to the valuation of the coal mineral interests. During this period, Ms. Robertson contended that Parcel 8–1 contained *more* than 11.08 acres. Ms. Robertson asserted that Parcel 8–1 was comprised of an additional 22.33 acres. Therefore, DOT was obligated to compensate her for the coal minerals underlying the additional acreage. On April 2, 2003, DOT filed a motion in limine to limit the testimony of Ms. Robertson's designated experts to the value of the affected coal minerals on only 11.08 acres.

On April 21, 2003, the court held a hearing on DOT's motion in limine.[6] During that hearing, counsel for Ethel Erickson, a former owner of Parcel 8–1, moved the court for leave to intervene. Ms. Erickson sought intervention on the grounds that she was the actual owner of the disputed 22.33 acres. On May 9, 2003, the circuit court entered an order addressing the issues raised at the April 21st hearing. In that order, the court permitted Ms. Erickson to intervene. The order also stated that the parties had agreed to let the court, as opposed to a jury, determine the issue of the ownership of the disputed 22.33 acres. The order invited the parties to file motions for partial summary judgment addressing the issue of ownership of the disputed 22.33 acres. Finally, the order expressly stated that a decision on DOT's motion in limine would be held in abeyance until a later date.

On July 16, 2003, DOT filed a motion for partial summary judgment. DOT's motion did not address the issue of who owned the disputed 22.33 acres. Instead, DOT argued that Ms. Robertson should not be allowed to use the additional acreage to increase the 11.08 acres that were involved in the condemnation proceeding. Ms. Robertson filed a response to DOT's motion.[7] In her response, Ms. Robertson argued that should the court conclude that she was the owner of the disputed 22.33 acres, then DOT should be held liable for compensating her for the coal minerals underlying that additional property.[8]

On July 18, 2003, Ms. Robertson filed a motion for partial summary judgment. Ms. Robertson's motion was confined to allegations that she was the rightful owner of the disputed 22.33 acres.[9] Also on July 18th, Ms. Erickson filed a motion for partial summary judgment contending that she was the lawful owner of the disputed 22.33 acres.[10]

After a hearing on the partial summary judgment motions, the circuit court, by order entered October 17, 2003, granted partial summary judgment in favor of Ms. Robertson. In that order, the circuit court found that the metes and bounds descriptions in the deed for Parcel 8–1 were incorrect. The circuit court further concluded that the disputed 22.33 acres should have been included in the deed. The circuit court finally ordered that Ms. Erickson "must draft a reformed

**6.** DOT also filed another motion that was heard, but is not relevant to this appeal.

**7.** Ms. Erickson did not file a response to DOT's partial summary judgment motion.

**8.** DOT's motion for partial summary judgment was essentially a restatement of its earlier motion in limine. However, it does not appear that the circuit court's May 9, 2003, order contemplated the type of partial summary judgment motion filed by DOT. The order expressly reserved ruling on the motion in limine for a later day. In its brief, DOT has asserted that "[t]he parties agreed that the circuit court could resolve any material issues of fact which existed with those issues to be submitted upon cross-motions for summary judgment." This assertion by DOT is confirmed by the fact that Ms. Robertson filed a response to DOT's partial summary judgment motion without any objection to the motion as being outside the scope of the May 9th order.

**9.** Ms. Erickson filed a response to Ms. Robertson's motion. DOT did not respond.

**10.** Ms. Robertson filed a response to Ms. Erickson's motion, DOT did not respond.

deed ... and deliver it to Joyce Robertson." As a result of those rulings, DOT filed an appeal to this Court.

## II.

## STANDARD OF REVIEW

■ We are asked to review the circuit court's entry of partial summary judgment.[11] With respect to our standard of review, we now hold that Appellate review of a partial summary judgment order is the same as that of a summary judgment order, which is *de novo. See Smith v. First Community Bancshares, Inc.,* 212 W.Va. 809, 816, 575 S.E.2d 419, 426 (2002); *Stonewall Jackson Mem'l Hosp. Co. v. American United Life Ins. Co.,* 206 W.Va. 458, 463, 525 S.E.2d 649, 654 (1999); *Murray v. State Farm Fire & Cas. Co.,* 203 W.Va. 477, 482, 509 S.E.2d 1, 6 (1998). In conducting our *de novo* review, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

With regard for these standards, we turn to the issues herein raised.

## III.

## DISCUSSION

### A. DOT's Standing to Appeal

■ The first issue we must confront is Ms. Robertson's assertion that DOT lacks standing to challenge the partial summary judgment order. Ms. Robertson has interpreted the partial summary judgment order as involving *only* the issue of ownership of the disputed 22.33 acres. Therefore, DOT is not involved. If the procedural posture of this case was as narrow as Ms. Robertson contends, we would agree that DOT lacked standing to appeal the partial summary judgment order.[12] However, the procedural posture below was much more broad than Ms. Robertson has asserted.[13]

This Court has observed that, "[g]enerally, standing is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Findley v. State Farm Mut. Auto. Ins. Co.,* 213 W.Va. 80, 94, 576 S.E.2d 807, 821 (2002) (quoting Black's Law Dictionary 1413 (7th ed.1999)). We articulated the elements for establishing standing in Syllabus point 5 of *Findley* as follows:

> Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

213 W.Va. 80, 576 S.E.2d 807. We believe the procedural facts of this case support DOT's standing to bring this appeal.

---

11. We note that the circuit court's partial summary judgment order did not contain all of the certification language required by Rule 54(b) of the West Virginia Rules of Civil Procedure, but the order did indicate that it was a final order. Further, for appeal purposes, we have held that "even if an order is not certified by a circuit court under Rule 54(b), it may nevertheless be considered 'final' if it approximates a final order in its nature and effect." *Hubbard v. State Farm Indem. Co.,* 213 W.Va. 542, 549, 584 S.E.2d 176, 183 (2003).

12. As indicated previously, DOT did not file responses to the partial summary judgment motions filed by Ms. Robertson and Ms. Erickson. Those motions specifically addressed the issue of the ownership of the 22.33 acres. DOT's motion for partial summary judgment only addressed the issue of precluding evidence of the additional acreage.

13. In fairness to Ms. Robertson, the brief of DOT does in fact raise arguments seeking to challenge ownership of the disputed 22.33 acres, which was a matter between Ms. Robertson and Ms. Erickson. As we stated in *Hubbard v. State Farm Indemnity Co.,* 213 W.Va. 542, 584 S.E.2d 176 (2003), " '[w]here parties to an action stand upon distinct and unconnected grounds, their rights being separate and not equally affected by the same decree, the appeal of one will not bring up for adjudication the rights of the other.'" *Hubbard,* 213 W.Va. at 548 n. 11, 584 S.E.2d at 182 n. 11 (quoting Franklin D. Cleckley, Robin J. Davis and Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 72, at p. 1064 (2002)).

First, as a consequence of the partial summary judgment order, DOT has sustained an injury-in-fact. As previously noted, DOT filed a separate motion for partial summary judgment. Ms. Robertson filed a response to the motion. In that response, Ms. Robertson argued that should the court find that she was the owner of the 22.33 acres, then the court should hold DOT liable to her for the coal minerals underlying the additional acreage. The partial summary judgment order stated "[t]he Court has studied all the motions, the responses to the motions, the memoranda of law, affidavits, depositions, and exhibits submitted by the parties.... As a result of these deliberations ... the Court has concluded that Defendant Robertson is entitled to Summary Judgment." The order expressly stated that the circuit court considered *all* of the motions, which would include DOT's motion for partial summary judgment and Ms. Robertson's response. Thus, absent specific language in the order excluding its application to DOT's partial summary judgment motion, we must presume that in granting Ms. Robertson partial summary judgment, the circuit court's ruling meant that not only did Ms. Robertson own the disputed 22.33 acres, but that she would also be allowed to claim compensation for coal minerals underlying the 22.33 acres.[14] Consequently, the injury-in-fact to DOT is that the circuit court's order exposes it to compensate Ms. Robertson for coal minerals underlying an additional 22.33 acres, as opposed to only 11.08 acres.

Second, there is a causal connection between the injury and the conduct forming the basis of the lawsuit. The injury to DOT is the increased liability for additional coal minerals. This injury is directly connected to the conduct forming the basis of the litigation. That is, the litigation has continued solely because the parties could not agree on the amount of compensation Ms. Robertson should receive for the coal minerals. Finally, the injury-in-fact can be redressed through a favorable decision of this Court. Accordingly, we find that DOT has standing to appeal

the lower court's partial summary judgment order.

### B. Date of the Take

Next, DOT argues that, under this Court's interpretation of W. Va.Code § 54–2–14a (1981) (Repl.Vol.2000) [15] in *West Virginia Department of Highways v. Roda,* 177 W.Va. 383, 352 S.E.2d 134 (1986), Ms. Robertson is precluded from seeking compensation for the additional 22.33 acres. DOT has interpreted *Roda* as holding that the *extent of ownership* of condemned land is determined on the date of the take. That is, the date when the condemnation application is filed. We disagree.

*Roda* was a condemnation proceeding in which the Department of Highways sought to condemn property for the construction of a highway. During some period prior to filing an application to condemn the property, contractors for DOH began excavation work on the property, which included removing coal. DOH eventually filed an application to condemn the property in August of 1974. The case lingered in court until July of 1984, when a trial was held to determine the value of the coal that had been removed. *Roda* is unclear on this point, but it appears that the coal was virtually worthless prior to the date that DOH filed its application. However, on the date the application was filed, the coal obtained a market value. Consequently, the landowners filed a pretrial motion in limine seeking to prevent DOH from presenting evidence as to the value of the coal prior to the date of the take, *i.e.,* prior to the date the condemnation application was filed. The trial court granted the motion. The jury returned a verdict holding DOH liable to the landowners for the sum of $890,136.00 as just compensation for the coal. DOH appealed.

One of the issues presented in *Roda* was a determination of the appropriate date upon which condemned property should be valued. To resolve this issue the Court looked for guidance from decisions in other jurisdictions. Ultimately, *Roda* held that, "in eminent domain proceedings, the date of take for

---

14. This implicit ruling rendered DOT's previous motion in limine moot.

15. This statute sets out general guidelines that must be followed by government entities seeking to condemn private property.

the purpose of determining the fair market value of property ... is the date on which the property is lawfully taken by the commencement of appropriate legal proceedings pursuant to W. Va.Code, 54–2–14a[.]." *Roda,* 177 W.Va. at 387, 352 S.E.2d at 139. Consequently, *Roda* affirmed the judgment against DOH.

■ Here, DOT has asserted that the date of the take was April 17, 2000, when it filed its condemnation application. Further, DOT contends that, under *Roda,* it was the date of the take that established the extent of Ms. Robertson's interests in the property being condemned and the property affected by the condemnation. Consequently, DOT contends that under *Roda,* Ms. Robertson could not assert a property interest greater than that which was established on the date of the take. We do not accept DOT's interpretation of *Roda.* The decision in *Roda* was not concerned with, nor did it address the issue of, the extent of a landowner's interest in property on the date of the take. *Roda* stands for the proposition that whenever a determination of the value of property is made, that determination must be based upon the fair market value of the property when the condemnation application was filed. Neither *Roda* nor the provisions in W. Va.Code § 54–2–14a address the issue of the extent of a landowner's property on the date of the take. Thus, this argument was insufficient to preclude partial summary judgment against DOT.[16]

## C. Judicial Estoppel

Implicit in DOT's "date of the take" argument is an assertion that Ms. Robertson should be estopped from claiming compensation for coal minerals underlying the additional 22.33 acres. In fact, Ms. Robertson recognized in her response brief below that the essence of DOT's argument is that she "is essentially estopped from claiming compensation for the mineral interests on [the 22.33 acres] due to the Partial Final Order entered on April 10, 2001." Insofar as DOT failed to identify the specific estoppel doctrine that was implicit in its argument below, we will do so now.

■ Courts have recognized that "[t]here are several estoppel doctrines, including equitable estoppel, judicial estoppel, promissory estoppel, estoppel by record, estoppel by deed, and collateral estoppel." *Roberts v. ALCOA, Inc.,* 811 N.E.2d 466, 475 (Ind.App.2004). *See Whitacre P'ship v. Biosignia, Inc.,* 358 N.C. 1, 591 S.E.2d 870, 879 (2004) (" 'Estoppel' is not a single coherent doctrine, but a complex body of interrelated rules, including estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel, promissory estoppel, and judicial estoppel."). We believe that the estoppel doctrine that is applicable to the facts of this case is the doctrine of judicial estoppel.[17] We have invoked this doctrine, sua sponte, based on our consideration of three factors. First, it is generally recognized that "a court, even an appellate court, may raise [judicial] estoppel on its own motion in an appropriate

16. In this appeal, DOT has also argued that Ms. Robertson could only attack the April 10, 2001, partial final order through Rule 60(b), and not through summary judgment, because the time for appeal of that order has run. This argument was not presented to the circuit court, so we will not pass upon it in this appeal. *See Bowers v. Wurzburg,* 207 W.Va. 28, 41, 528 S.E.2d 475, 488 (1999) ("[W]e have repeatedly admonished that nonjurisdictional issues not raised before the trial court will not be addressed on appeal."). DOT has additionally challenged the circuit court's determination that Ms. Robertson owns the 22.33 acres. That issue, as previously indicated, is a matter between Ms. Robertson and Ms. Erickson. Further, it was not an issue argued by DOT in its motion for partial summary judgment. Although we have grave concerns about the evidence used to give Ms. Robertson ownership of the 22.33 acres, and even greater

concern over the fact that Ohio Valley College was not a party to this matter, resolution of this issue affected Ms. Erickson, and she has not appealed the matter.

17. "Judicial estoppel ... is distinguishable from its companion doctrines in two principle respects. First, judicial estoppel seeks to protect courts, not litigants, from individuals who would play 'fast and loose' with the judicial system.... Second, because of its inherent flexibility as a discretionary equitable doctrine, judicial estoppel plays an important role as a gap-filler, providing courts with a means to protect the integrity of judicial proceedings where doctrines designed to protect litigants might not adequately serve that role." *Whitacre P'ship v. Biosignia, Inc.,* 358 N.C. 1, 591 S.E.2d 870, 887 (2004).

case." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir.1990). *Accord Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1168 n. 5 (4th Cir.1982); *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 530 (5th Cir.2000); *Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo.1976) ("We are not a bit concerned that the matter of judicial estoppel was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state.... It is our duty to protect its integrity and prohibit dealing lightly with its proceedings."); Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 3(f) (Supp.2005) ("[J]udicial estoppel may be raised sua sponte by a trial court or appellate court."). Second, where inconsistent conduct is taken that "is barred by ... judicial estoppel, there are no triable issues of fact as a matter of law." *Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d at 895. *See also Kitty–Anne Music Co. v. Swan*, 112 Cal.App.4th 30, 4 Cal.Rptr.3d 796, 800 (2003) ("The determination whether judicial estoppel applies is a question of law."). Third, the record presented in this appeal is quite sufficient for this Court to determine the application of the doctrine. *See, e.g., Kolodge v. Boyd*, 88 Cal. App.4th 349, 105 Cal.Rptr.2d 749, 770 (2001) ("We are unwilling to invoke the doctrine sua sponte on this record.").

▬▬▬ The doctrine of "[j]udicial estoppel is a common law principle which precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation." *In re C.Z.B.*, 151 S.W.3d 627, 633 (Tex.Ct.App.2004). Under the doctrine, a party is "generally prevent[ed] ... from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 2154, n. 8, 147 L.Ed.2d 164, 180 n. 8

(2000). This Court recognized long ago that "[t]here are limits beyond which a party may not shift his position in the course of litigation[.]" *Watkins v. Norfolk & Western Ry. Co.*, 125 W.Va. 159, 163, 23 S.E.2d 621, 623 (1942). Thus, " '[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' " *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 552 n. 21, 584 S.E.2d 176, 186 n. 21 (2003) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968, 977 (2001)). *See also* Syl. pt. 2, *Dillon v. Board of Educ. of Mingo County*, 171 W.Va. 631, 301 S.E.2d 588 (1983) ("Parties will not be permitted to assume successive inconsistent positions in the course of a suit or a series of suits in reference to the same fact or state of facts."); *Gelwicks v. Homan*, 124 W.Va. 572, 583, 20 S.E.2d 666, 671 (1942) ("One may not defend a suit upon one ground; and then later defend the same suit, or one growing out of the same transaction, on grounds separate and distinct from those formerly asserted[.]").[18]

▬▬▬ "Judicial estoppel is an extraordinary remedy that should be invoked only when a party's assertion of a contrary position will result in a miscarriage of justice and only in those circumstances where invocation of the doctrine will serve its stated purpose[.]" *Puder v. Buechel*, 362 N.J.Super. 479, 828 A.2d 957, 965 (2003). *See also Cothran v. Brown*, 357 S.C. 210, 592 S.E.2d 629, 632 (2004) ("The application of judicial estoppel must be determined on a case-by-case basis, and must not be applied to impede the truth-seeking function of the court."). The "dual goals [of the doctrine] are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strate-

**18.** "The doctrine of judicial estoppel does not conflict with Rule 8(e)(2), which permits a party to plead inconsistent theories, because judicial estoppel does not bar a party from contradicting itself, the doctrine bars contradicting a court's determination that was based on that party's position." Cleckley, Davis & Palmer, *Litigation*

*Handbook* § 3(f) (Supp.2005) (citing *Brinkman v. Gilligan*, 85 F.Supp.2d 761 (S.D.Ohio 1999)). *See also Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d at 890 ("[J]udicial estoppel ... should not be applied to prevent the assertion of inconsistent legal theories.").

gies." *People ex rel. Sneddon v. Torch Energy Servs., Inc.,* 102 Cal.App.4th 181, 125 Cal. Rptr.2d 365, 370 (2002).[19] The doctrine fulfills its goals by "bind[ing] a party to his or her judicial declarations, and precludes [that] party from taking a position inconsistent with previously made declarations in a subsequent action or proceeding." *Kauffman–Harmon v. Kauffman,* 307 Mont. 45, 36 P.3d 408, 412 (2001).

■ "[T]he circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation." *New Hampshire v. Maine,* 532 U.S. 742, 743, 121 S.Ct. 1808, 1810, 149 L.Ed.2d 968, 973 (2001). Nevertheless, as illustrated below, some courts have set out guidelines that should be considered in determining whether to apply the doctrine of judicial estoppel.

The Supreme Court of Montana established the following criteria for determining when the doctrine of judicial estoppel applies:

A party claiming that judicial estoppel bars another party from re-litigating an issue must show: (1) the estopped party had knowledge of the facts at the time he or she took the original position; (2) the estopped party succeeded in maintaining the original position; (3) the position presently taken is inconsistent with the original position; and (4) the original position misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party.

*Stanley L. & Carolyn M. Watkins Trust v. Lacosta,* 321 Mont. 432, 92 P.3d 620, 627 (2004). Likewise, a Court of Appeals of California established the following criteria for determining when the doctrine of judicial estoppel applies:

In accordance with the purpose of judicial estoppel, we conclude that the doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e.,

the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.

*Jackson v. County of Los Angeles,* 60 Cal. App.4th 171, 70 Cal.Rptr.2d 96, 103 (1997). Similarly, a Court of Appeals of Texas set out the following criteria for determining when the doctrine of judicial estoppel applies:

Under Texas law, the elements for judicial estoppel are: (1) the opponent made a sworn, inconsistent statement in a prior judicial proceeding; (2) the opponent gained some advantage by the prior statement; (3) the statement was not made inadvertently or because of mistake, fraud or duress; and (4) the statement was deliberate, clear and unequivocal.

*Dallas Sales Co., Inc. v. Carlisle Silver Co., Inc.,* 134 S.W.3d 928, 930 (Tex.Ct.App.2004).

Moreover, the Supreme Court of South Carolina established the following criteria for determining when the doctrine of judicial estoppel applies:

We now adopt the following elements necessary for the doctrine to apply: (1) two inconsistent positions taken by the same party or parties in privity with one another; (2) the positions must be taken in the same or related proceedings involving the same party or parties in privity with each other; (3) the party taking the position must have been successful in maintaining that position and have received some benefit; (4) the inconsistency must be part of an intentional effort to mislead the court; and (5) the two positions must be totally inconsistent.

*Cothran v. Brown,* 357 S.C. 210, 592 S.E.2d 629, 632 (2004). In the same vein, the Supreme Court of Arkansas established the following criteria for determining when the doctrine of judicial estoppel applies:

A prima facie case of judicial estoppel includes four elements: 1. A party must assume a position clearly inconsistent with

---

**19.** "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir.1993).

a position taken in an earlier case, or with a position taken in the same case; 2. A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; 3. A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and, 4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

*Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464, 467 (2004).

 After thoroughly considering the foregoing factors employed by courts to examine whether the doctrine of judicial estoppel may be invoked, we now hold that judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process. We will now apply the factors of our test to the facts of this case.

 **(1) Inconsistent positions.** The first issue we must examine involves a determination of whether Ms. Robertson assumed a position on the accuracy of the metes and bounds descriptions of Parcel 8-1, as reflected in the deed, that was clearly inconsistent with a position taken by her earlier in the same case. In Ms. Robertson's response to DOT's motion for partial summary judgment, she argued that she had "been claiming additional acreage since she contracted for the purchase of the property in 1995—over six years prior to the taking at issue." [20] The position adopted by Ms. Robertson, for

purposes of partial summary judgment, was inconsistent with the position she took when the partial final order was entered on April 10, 2001.

When the partial final order was entered, the record in the case reflected that the metes and bounds descriptions of Parcel 8-1, as set out in Ms. Robertson's deed, contained only 11.08 acres. Ms. Robertson does not dispute this fact. When the trial court accepted the parties' partial settlement agreement, the court and DOT were under the impression that the metes and bounds descriptions in the deed for Parcel 8-1 were correct and that Parcel 8-1 contained only 11.08 acres. It was not until approximately two years after the circuit court entered the partial final order that Ms. Robertson represented to the court and DOT that the metes and bounds descriptions in the deed for Parcel 8-1 were incorrect and that Parcel 8-1 contained an additional 22.33 acres.

In sum, for the purposes of the partial final order, Ms. Robertson led the court and DOT to believe that the deed for Parcel 8-1 was correct and that she owned only 11.08 acres. Only after the partial final order obligated DOT to compensate Ms. Robertson for the coal minerals under Parcel 8-1 did she take the inconsistent position that the deed for Parcel 8-1 was incorrect and that Parcel 8-1 contained an additional 22.33 acres.

**(2) Same parties.** The next element of our judicial estoppel test requires a determination of whether the inconsistent positions taken by Ms. Robertson occurred in a proceeding involving the same adverse party. The record in this case is quite clear. The inconsistent positions taken by Ms. Robertson occurred in the same condemnation proceeding filed by DOT.

**(3) Benefit received.** The third element of the test demands that we determine whether Ms. Robertson received some benefit from the original position she took in the case. The record clearly illustrates that Ms. Robertson benefitted from her original posi-

---

**20.** Although Ms. Robertson appears to have been negotiating directly with Ms. Erickson for the purchase of Parcel 8-1 in the mid-1990's, Ms. Erickson did not actually convey the property to her. As previously indicated, the deed for Parcel 8-1 shows that Ms. Robertson purchased the property from Ohio Valley College.

tion. As a result of Ms. Robertson's representation to DOT that the metes and bounds descriptions for Parcel 8–1 were correct and that Parcel 8–1 contained only 11.08 acres, DOT agreed to pay and did pay her nearly 2 million dollars for Parcel 8–1. Additionally, DOT agreed to compensate her for coal minerals underlying Parcel 8–1 based upon the metes and bounds description in the deed.

(4) **The new position injures DOT.** The final element of our judicial estoppel test requires a determination of whether Ms. Robertson's original position misled DOT and whether allowing her to change her position would injuriously affect DOT and the integrity of the judicial process. Ms. Robertson represented to DOT, through her deed, that Parcel 8–1 was only 11.08 acres. Acting upon this representation, DOT entered into an agreement that obligated DOT to compensate Ms. Robertson for coal minerals underlying 11.08 acres. The new position taken by Ms. Robertson now obligates DOT to compensate her for coal minerals underlying an additional 22.33 acres. Obviously, DOT is injured by the new position.

Moreover, the integrity of the judicial process is adversely affected by the new position taken by Ms. Robertson. The parties entered into a voluntary agreement that obligated DOT to compensate Ms. Robertson for coal minerals underlying Parcel 8–1, as described by the metes and bounds in the deed. The parties asked the trial court to reflect their agreement in a partial final order. That order judicially required DOT to compensate Ms. Robertson for the coal minerals underlying Parcel 8–1. Only after Ms. Robertson obtained a court order obligating DOT to compensate her for the coal minerals did she decide to disclose to the court and DOT that the metes and bounds description in the deed for Parcel 8–1 was inaccurate. Rather than, for example, asking the court to set aside its partial final order and tender back to DOT the approximately 2 million dollars she received, Ms. Robertson sought to take advantage of the binding nature of the partial final order by making DOT compensate her for an additional 22.33 acres that she claims are part of Parcel 8–1. Clearly, Ms. Robertson's position "insults the integrity of the

judicial process." *State v. Fouse,* 120 Wis.2d 471, 355 N.W.2d 366, 370 (1984).

The inconsistent positions advanced by Ms. Robertson "operate[ ] to defeat goals designed to promote . . . respect for the judicial system." *Liberty Mut. Fire Ins. Co. v. Mandile,* 192 Ariz. 216, 963 P.2d 295, 299 (1997). The judicial system of this State is not designed to promote "footloose" tactics by litigants that lead to "gotcha" justice. Our system is designed to dispense justice based upon truth-seeking fair and impartial proceedings. Truth is the foundation of our system. "Without [it], our system would be a complete farce and cease to dispense justice." *In re Estate of Law,* 869 So.2d 1027, 1030 (Miss.2004). "The integrity and respect of our court system, founded on the search for truth and the adherence to principles of fundamental fairness, depends upon circuit court judges, attorneys that practice before them, and witnesses in all matters to act with forthright conviction and a commitment to truthfulness." *In re A.Y.,* 271 Wis.2d 242, 677 N.W.2d 684, 689–90 (2004). To permit Ms. Robertson to take inconsistent positions in this case "impedes, rather than promotes, the truth-seeking function of the judiciary and thereby hinders public confidence in the integrity of the judicial process." *People v. Goldston,* 470 Mich. 523, 682 N.W.2d 479, 488 n. 9 (2004).

(5) **The elements of judicial estoppel have been satisfied.** Having applied the facts of this case to the elements of our judicial estoppel test, we conclude that Ms. Robertson should be, and is, estopped from seeking compensation from DOT for coal minerals underlying the additional 22.33 acres. Consequently, we reverse the circuit court's denial of DOT's motion for partial summary judgment.

**IV.**

**CONCLUSION**

We affirm that part of the circuit court's October 17, 2003, order granting partial summary judgment to Ms. Robertson and against Ms. Erickson. However, we reverse that part of the order which denied DOT's motion for partial summary judgment. The circuit

court is instructed to enter an order granting DOT's motion for partial summary judgment precluding Ms. Robertson from presenting evidence or claiming compensation for the value of coal minerals under the additional 22.33 acres. The circuit court is further instructed to permit Ms. Robertson to present evidence claiming compensation for the value of coal minerals under the 11.08 acres. Accordingly, this case is remanded for further proceedings consistent with this opinion.

Affirmed in part; Reversed in part; and Remanded.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.

Judge JOLLIFFE, sitting by temporary assignment.

Chief Justice ALBRIGHT dissents and reserves the right to file a dissenting opinion.