STATE OF WEST VIRGINIA

**Toby E. Bell and Janice Johnson,**
**Defendants Below/Petitioners,**

**FILED**
**February 16, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 19-0019** (Pocahontas County 16-C-13(D))

**Lee Perkins, Harry Perkins, Jr., Rem Perkins,**
**And Annie Margaret Lou Perkins,**
**Plaintiffs Below/Respondents.**

## MEMORANDUM DECISION

Petitioners Toby E. Bell and Janice Johnson ("petitioners")[1] appeal the Circuit Court of Pocahontas County's entry of summary judgment and/or judgment on the pleadings in favor of respondents Lee Perkins, Harry Perkins, Jr., Rem Perkins, and Annie Margaret Lou Perkins ("respondents"),[2] finding that petitioners were divested of their interest in family acreage as a result of their mother's failure to pay a testamentary-required annual maintenance fee. The circuit court concluded that a prior order entered, similarly divesting other devisees of their interests on the same basis, did not relieve petitioners' mother of her ongoing obligation to pay the maintenance fee and that the heirs had not reached an agreement dispensing with the fee.

This Court has considered the parties' briefs, oral arguments, and the appendix record. Upon consideration of the standard of review and the applicable law, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's December 7, 2018, order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

## I.  Factual and Procedural History

Okey Johnson Perkins died testate in December 1964. His will conveyed a life estate in a 112-acre tract of land used as a hunting camp, along the Greenbrier River in Pocahontas County (known as the "Perkarosa"), to five of his six children—Mason Perkins, Kathleen McClung, James Perkins, Lucille Bell, and Cecil Perkins—and their children as remaindermen, as follows:

> I will, devise and bequeath unto five of my children, namely,
> MASON LEE PERKINS, KATHLEEN IRENE MCCLUNG,
> JAMES ROSS PERKINS, LUCILLE VALENTINE BELL and

---

[1] Petitioners are represented by Paul S. Detch, Esq., Lewisburg, West Virginia.

[2] Respondents are represented by Jeffry A. Pritt, Esq., Pritt Law Firm, PLLC, Union, West Virginia.

> CECIL RAPP PERKINS, that certain hunting camp located on the
> Greenbrier River, in Pocahontas County, West Virginia, for their
> lifetime, and then to their children as their interest may appear.

The will further provides that "each of the five previously named children be required to pay . . . the sum of One Hundred ($100.00) Dollars per year for the maintenance and upkeep of the premises" to Lee Perkins, one of Mason's sons and the caretaker of the camp. Further, "in the event any of the five aforementioned children shall fail to pay [the required maintenance fee] . . . then his or her interest in this property shall be divested as of the date of his or her failure to pay."

Only three of the five children—Mason, Lucille, and Cecil—paid their maintenance fee annually as required; Kathleen and James did not. As a result, in 1984, Lucille and her three then-surviving children—Toby Bell, Janice Johnson (petitioners herein), and Cuba Douglas—filed an action (the "1984 action") in the Circuit Court of Pocahontas County against the then-remaining heirs for a declaration as to the rights and interests of each, asserting Kathleen and James' non-payment of the maintenance fee.

In an order dated January 25, 1989 (the "1989 order"), the circuit court validated the will and found that Kathleen and James had failed to pay the maintenance fee and were therefore divested of their interests, extinguishing their respective life estates and their children's remainder interests. The order found that "as a result of such nonpayment Kathleen Irene McClung, and her heirs, and James Ross Perkins, and his heirs, have been divested of any legal right or interest in said property." The order further found that Lucille and Cecil, the two remaining living children,[3] continued to enjoy a life estate in the subject property and that their children, along with Mason's children and their heirs, continued to have "equal and undivided remainder interests."[4] The order also required an accounting of the property and any income and permitted the parties to seek a partition of the property. Shortly after entry of the 1989 order, Lucille and her then-surviving children filed a complaint for partition in a separate action in the Circuit Court of Pocahontas County, but took no action on the case, resulting in its dismissal on August 21, 1995.

It appears undisputed by the parties that Lucille initially continued to pay the maintenance fee after the 1984 action was instituted, but discontinued her payments during its pendency, making her last payment on January 27, 1986. In this regard, the 1989 order recites that "the parties appearing in this action have agreed that the dues owing for 1986 and thereafter need not be paid until this lawsuit is resolved." Lucille died in 2004 having apparently never resumed payment of the maintenance fee. However, both Mason's children and/or their heirs and Cecil and/or his children resumed paying the fee after the 1984 action was completed.

---

[3] The record suggests that Mason Perkins died in the late 1970s.

[4] The 1989 order further acknowledged a dower life estate in Okey Perkins' widow, Linda McFarren Perkins.

2

In 2016, due to Lucille's failure to resume payment of the maintenance fee at any time after the 1984 action was resolved, respondents filed the instant action against petitioners[5] seeking a declaration that their remainder interests had been divested by Lucille's failure to pay the maintenance fee.

Respondents moved for judgment as a matter of law and/or summary judgment based on Lee's affidavit that Lucille did not pay her maintenance fee after 1986. Petitioners opposed the motion on the basis that 1) the 1989 order found that the life estates and remainder interests were "presently vested" and there was no further contingency such as the maintenance fee; 2) the order did not specifically provide for the resumption of the maintenance fee; and 3) the court-ordered accounting had never occurred. Petitioners argued further that no one had demanded a maintenance fee for twenty-seven years and that it was the "[c]ourt's clear intention by its order in 1989 [] that there was no longer any requirements under the Last Will and Testament to make any further payments[.]" Finally, petitioners argued that by virtue of the "family settlement doctrine," the heirs had effectively agreed to an alternative disposition of the conveyance, i.e. discontinuation of the maintenance fee, by virtue of its omission from the 1989 order.

The circuit court rejected petitioners' claim that the 1984 action was somehow "unresolved," finding that the accounting was indeed filed and that counsel had agreed that the matter was appropriate for final resolution by virtue of certain filings in the 1984 docket. It further found that no demand for the maintenance fee was necessary and that the plain language of the 1989 order indicates that payments were suspended only "until this lawsuit is resolved." Finally, the court found that no "family settlement agreement" was ever reached based upon the record. Accordingly, the court concluded that as a result of Lucille's failure to resume payment of the maintenance fee, she and her heirs were "divested of any legal right or interest in said property[.]"[6] This appeal followed.

## II. Standard of Review

It is well-established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Similarly, but more specifically, declaratory relief is likewise reviewed de novo. *See* Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo*."). With this standard of review in mind, we turn to the parties' arguments.

---

[5] Respondents also named Andrew Douglas, who is the surviving spouse of Lucille's deceased daughter Cuba, as a defendant in this action. Mr. Douglas made no appearance in the action below, nor has he made an appearance before this Court.

[6] The circuit court further rejected a passing suggestion in petitioners' response brief that the will violated the rule against perpetuities. The court found that this defense was neither asserted in a probate proceeding, nor was the 1989 order—which validated the will—appealed on that basis.

3

### III. Discussion

On appeal, petitioners assert that the 1989 order's omission of an express requirement of continued payment of the maintenance fee extinguished the will's requirement to that effect and further that the order's language "vested" the parties' interests such that no conditions to their interests remained. Alternatively, petitioners argue that the order constituted a "family settlement agreement" to dispense with any further maintenance fees.[7]

___

[7] Petitioners make two additional arguments imbedded in their assignments of error, with which we may quickly dispense. First, petitioners assert the circuit court erroneously applied the maintenance fee obligation to them as remaindermen, rather than the children, and therefore divested them due to *their* failure to pay the fee, rather than their mother. However, the circuit court's order clearly states that "since *Lucille Bell Perry* did not make annual payments as required by the terms of the Will, as a result of such nonpayment, Lucille Bell Perry, and her heirs, have been divested of any legal right or interest in said property[.]" (Emphasis added).

Petitioners also appear to make the argument that respondents waived their right to seek divestiture based upon nonpayment, by failing to make a demand for payment. Petitioners obliquely reference respondents' "twenty-seven year acquiesce [sic] in the non-payment of maintenance fees" and appear to tie this semblance of a waiver argument to equity's disfavor of "forfeitures."

Respondents note that petitioners did not assert waiver as an affirmative defense below, nor in opposition to petitioners' dispositive motion, and therefore may not advance that argument for the first time on appeal. We agree. The Court has made clear that

> [o]ur general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal.
>
> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

*Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) (citations omitted). Petitioners made no waiver argument below, the record demonstrates no factual development of the issue, nor did the circuit court address waiver in its order. Accordingly, we decline to address it for the first time here.

Respondents counter that the circuit court correctly determined that the 1989 order's language stating that the fees need not be paid "until this lawsuit is resolved" clearly contemplates resumption of the fees after the suit. In that regard, they contend that neither the 1989 order nor the record contains evidence of any "family settlement agreement" to dispense with the fees. Finally, they maintain that irrespective of any purported "vesting" which may have occurred due to the 1989 order, the maintenance fee condition remained in effect. More generally, however, respondents contend that divestment of Lucille and her remaindermen is required by the "law of the case" doctrine or res judicata. In short, respondents observe that Lucille and petitioners requested precisely the same construction of the will in the 1984 action as employed by the circuit court below—that failure to pay the fee divests the life estate and remainder—and previously used that construction to divest other siblings and their heirs of their interests.[8] As a result, respondents contend that petitioners are now bound by the same application of the will's provisions.

Our analysis must begin with an examination of the 1984 action and the language of the 1989 order adjudicating that matter; however, we need not linger over this aspect. Petitioners argue that the order is silent on continued payment of the fees and, as a result, the court did not intend for payment to resume. However, as respondents note and the circuit court correctly found, the 1989 order expressly sets forth the parties' agreement that the maintenance fee need not be paid "until this lawsuit is resolved." Any ordinary reading of that language clearly connotes that after the lawsuit is resolved, the fees must resume. In fact, that is precisely what the remaining heirs did. Moreover, as this language is the only evidence in the appendix record regarding any sort of agreement among the heirs regarding the fee, we likewise agree with the circuit court's conclusion that petitioners have failed to demonstrate a "family settlement agreement" to dispense with payment of the fee.

Petitioners argue that the 1989 order served in some measure to displace the will and its requirements and govern the parties' obligations and interests going forward. Accordingly, they claim that its silence on the maintenance fee condition and reference to "equal and undivided remainder interests" serves to "vest" those interests and extinguish any further fee obligation. Petitioners provide no legal support for the position that a declaratory judgment to construe the language of a will and enforce one of its provisions nullifies the continued effect of the will and its requirements. In fact, the 1989 order expressly validates the will and its requirements: "[T]he Court does find that the will . . . is the authentic and legally valid will of Okey Johnson Perkins[.]" Further, we find nothing in the language of the 1989 order which purports to do anything more than order the divestment of James and Kathleen and their heirs because of their failure to pay the fee and recognize the interests which remain as a result. Therefore, we conclude that the 1989 order neither altered petitioners' interest in the subject property nor supplanted the operative terms of the properly validated will. More importantly, however, we conclude that petitioners are collaterally estopped from seeking a different result from that which they affirmatively sought in the 1984 action.

---

[8] The record reflects that petitioners, along with their mother, requested the court in the 1984 action to "ascertain . . . [w]hether Kathleen Irene McClung has forfeited her rights to participate in any ownership of said property by her failure to pay the required $100; . . . [and] [w]hether the heirs-at-law of James Ross Perkins, deceased, have forfeited their right to participate in any ownership of said property by failure to pay the required sums[.]"

As indicated above, respondents argue that petitioners' challenge to the circuit court's ruling is barred by the "law of the case" doctrine or, alternatively, res judicata. Generally, they contend that the operation of the will language regarding nonpayment of the maintenance fee has already been adjudicated with the same parties. While respondents correctly state that the resultant effect of failure to pay the maintenance fee with respect to this specific devise has already been adjudicated, we find that neither "law of the case" nor res judicata applies here. Rather, it is the doctrine of collateral estoppel that applies to bar petitioners from obtaining relief from the circuit court's determination.[9]

First, the "law of the case" doctrine bars relitigation of issues previously decided in the same case. *See State ex rel. TermNet Merch. Servs., Inc. v. Jordan*, 217 W. Va. 696, 702 n.14, 619 S.E.2d 209, 215 n.14 (2005) ("The law of the case doctrine provides that a prior decision in a case is binding upon subsequent stages of litigation between the parties in order to promote finality.") Here, inasmuch as the case at bar is separate and distinct from the 1984 action, it is readily apparent that the "law of the case" doctrine has no applicability.

Secondly, with respect to res judicata, we agree that the current parties are largely the same—or in privity with—the parties in the 1984 action. However, this action asserts a different party's failure to pay and therefore seeks to dispense with the rights of different individuals than the 1984 action. Application of res judicata requires a final adjudication on the merits in the prior action, which involves the same parties or persons in privity, and that the "cause of action identified for resolution in the subsequent proceeding [] be *identical* to the cause of action determined in the prior action[.]" Syl. Pt. 4, in part, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W. Va. 469, 498 S.E.2d 41 (1997) (emphasis added).[10] The instant case involves Lucille's failure to pay the maintenance fee—an *issue* addressed in the prior litigation, but forms the basis of a different *claim*, seeking to extinguish the interests of a different party.

This Court has noted that the "doctrines of *res judicata*, or claim preclusion, and collateral estoppel, or issue preclusion, are closely related." *State v. Miller*, 194 W. Va. 3, 9, 459 S.E.2d 114, 120 (1995). While res judicata requires the claims to be identical, collateral estoppel bars relitigation of "identical *issues* raised in successive proceedings" where there was a prior

---

[9] Petitioners do not address this issue in their briefing. However, they vaguely insinuate that the court's determination as to the operation of the maintenance fee language was potentially erroneous because the will "had problems[.]" Petitioners suggest the devise violates the rule against perpetuities, *see* note 6 *supra*, and further fails to make "clear as to whom the divesting interests of the property were to go in the event that any party failed to make their payment." Respondents tersely respond by stating simply that "the remainder interests . . . were [] wrapped up with the interest of their parent, and subject to the occurrence of a divesting event."

As noted *infra*, the Court makes no conclusion about the merits of the 1989 order's legal determinations.

[10] *Blake* further holds that res judicata is applicable to matters which "*could have been* resolved, had [they] been presented, in the prior action." Syl. Pt. 4, in part, *Id*. (emphasis added).

6

"determination of the issues by a valid judgment . . . which . . . was essential to the judgment." *Id.* (emphasis added). In short, "[c]ollateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." Syl. Pt. 2, in part, *Conley v. Spillers*, 171 W. Va. 584, 301 S.E.2d 216 (1983). Collateral estoppel requires that:

> (1) the issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, in part, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. We find that each of these elements is satisfied here: the effect of failure to pay the maintenance fee on the devisee's interests in this specific will has previously been adjudicated to finality. All of the parties to the instant case—or their privies[11]—were likewise parties to the 1984 action, wherein they each had an opportunity to litigate and protect their interests. Accordingly, we find that to the extent petitioners are attempting to seek relief from application of a prior determination of this same issue in the 1984 action, they are barred by collateral estoppel.[12]

Additionally, and perhaps more strikingly, petitioners' challenge is likewise barred by the concept of judicial estoppel. Although not raised by respondents, "it is generally recognized that 'a court, even an appellate court, may raise [judicial] estoppel on its own motion in an appropriate case.'" *W. Va. Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 503-04, 618 S.E.2d 506, 512-13 (2005) (quoting *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.1990)). In the 1984 action, petitioners herein, along with their mother Lucille, urged the divestment of two other siblings for the same failure to pay the maintenance fee. This Court has recognized that "a party is 'generally prevent[ed] . . . from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *Robertson*, 217 W. Va. at 504, 618 S.E.2d at 513 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Petitioners now

---

[11] While Harry Perkins, Jr., Rem Perkins, and Annie Margaret Lou Perkins were not parties to the 1984 action, their predecessor in interest, Harry Knight Perkins, was a party.

[12] We emphasize, however, that by estopping petitioners from evading the court's determination in the 1984 action that failure to pay the maintenance fee extinguishes both the life estate and remainder interests, we do not pass upon the legal accuracy of that construction of the will language. Whether that construction was correct or not is immaterial to its preclusive effect; the ruling was unappealed and therefore is final. "An [allegedly] erroneous ruling of the court will not prevent the matter from being *res judicata*." Syl. Pt. 1, *Conley*, 171 W. Va. 584, 301 S.E.2d 216. *See also Bison Ints., LLC v. Antero Res. Corp.*, No. 19-0527, 2020 WL 7223172 (W. Va. Nov. 10, 2020) (barring subsequent litigation on res judicata grounds despite unappealed claims that prior litigation erroneously refused to hear the issue).

attempt to evade precisely the same fate which they successfully imposed upon two of the original devisees, which enlarged their interests in the subject property.

> Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.

Syl. Pt. 2, *Robertson.*  Petitioners, their mother (Lucille), and respondents (or their privies) were all parties to the prior action; petitioners argued for the divestment of James and Kathleen and their heirs for failure to pay the maintenance fee.  Petitioners were successful in obtaining that construction of the will and benefitted from it by receiving the divested shares of the remainder: "'Parties will not be permitted to assume successive inconsistent positions in the course of a suit or a series of suits in reference to the same fact or state of facts.'  Syllabus, *McDonald v. Long*, 100 W.Va. 551, 131 S.E. 252 (1926)."  Syl. Pt. 2, *Dillon v. Bd. of Educ. of Mingo Cty.*, 171 W. Va. 631, 301 S.E.2d 588 (1983).  To now allow petitioners to evade the same consequences would affect the integrity of the prior proceedings.  *See Bison*, 2020 WL 7223172, at \*12 (quoting *Robertson*, 217 W. Va. at 505 n.19, 618 S.E.2d at 514 n.19) (stating judicial estoppel "'preclud[es] litigants from playing fast and loose with the courts, and prohibit[s] parties from deliberately changing positions according to the exigencies of the moment.'").  We therefore conclude that judicial estoppel likewise mandates that petitioners be denied relief.

Finding no error in the circuit court's ruling and for the additional reasons set forth hereinabove, we affirm the December 7, 2018, order of the Circuit Court of Pocahontas County, West Virginia.

Affirmed.

**ISSUED**:  February 16, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

8