No. 21-1001 – *City of Wheeling v. Public Service Commission of West Virginia and The City of Benwood.*

**FILED**

**April 24, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, joined by Justice Hutchison, dissenting:

The City of Benwood filed a complaint with the Public Service Commission ("PSC") challenging the City of Wheeling's proposed sewer service rate increase. West Virginia Code § 24-2-1(b)(6) authorizes the PSC to toll the 120-day period for resolution of such disputes "until the necessary information showing the basis of rates, fees, and charges or other information as the commission considers necessary is filed." *Id.* It is undisputed that (1) Wheeling controlled when the PSC received the necessary information that it needed to resolve this matter; and (2) the PSC entered its order within 120 days of receiving the necessary information from Wheeling. Based on these undisputed facts, I believe that the PSC complied with the 120-day resolution deadline contained in West Virginia § 24-2-1(b)(6). Therefore, I would have affirmed the PSC's order.

This case presents a straightforward issue of statutory interpretation requiring the Court to examine when the 120-day deadline contained in West Virginia Code § 24-2-1(b)(6) begins to run. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). Further, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure

1

meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W. Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted).

Turning to the statute at issue, West Virginia Code § 24-2-1(b)(6) provides:

(b) The jurisdiction of the commission over political subdivisions of this state providing separate or combined water and/or sewer services and having at least 4,500 customers and annual combined gross revenues of $3 million or more that are political subdivisions of the state is limited to: . . . .

(6) Investigation and resolution of disputes between a political subdivision of the state providing wholesale water and/or wastewater treatment or other services, whether by contract or through a tariff, and its customer or customers, including, but not limited to, rates, fees, and charges, service areas and contested utility combinations: Provided, That any request for an investigation related to a dispute that is based on the act or omission of the political subdivision shall be filed within 30 days of the act or omission of the political subdivision and *the commission shall resolve the dispute within 120 days of filing. The 120-day period for resolution of the dispute may be tolled by the commission until the necessary information showing the basis of the rates, fees, and charges or other information required by the commission is filed*: Provided, however, That the disputed rates, fees, and charges fixed by the political subdivision providing separate or combined water and/or sewer services shall remain in full force and effect until set aside, altered or, amended by the commission in an order to be followed in the future.

(Emphasis added).

Wheeling contends, and the majority opinion concluded, that this statute is unambiguous and provides that the 120-day dispute resolution period begins on the date a request for investigation is filed with the PSC. Wheeling focuses on the following statutory

2

language in support of its argument: "[T]he commission shall resolve the dispute within 120 days of filing." *Id.* Further, Wheeling argues that while the PSC has the authority to pause the 120-day period once it has begun, the PSC does not have the authority to postpone the commencement of the 120-day period.

By contrast, the PSC asserts that the 120-day period did not begin to run until it received all of the necessary information from Wheeling. The PSC relies on the following statutory language in support of its interpretation: "The 120-day period for resolution of the dispute may be tolled by the commission *until the necessary information showing the basis of the rates, fees, and charges or other information required by the commission is filed*[.]" *Id.* (Emphasis added). According to the PSC, its interpretation of the statute "ensures that [it] will have sufficient time to consider all of the necessary information provided to it." Further, the PSC asserts that its interpretation of the statute "meets the Legislature's goal for the PSC [which requires it] to timely evaluate disputes and to safeguard the interests of the public and the utilities provided to it."

As demonstrated by the parties' conflicting interpretations of West Virginia Code § 24-2-1(b)(6), this statute is reasonably susceptible to differing constructions and "reasonable minds might be uncertain or disagree as to its intended meaning." *Sizemore*, 202 W.Va. at 596, 505 S.E.2d at 659. Because West Virginia Code § 24-2-1(b)(6) is reasonably susceptible to differing constructions, I find that it is ambiguous.

When faced with an ambiguous statute, this Court has observed that "[a] statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v.*

3

*Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Also, "[w]hen a statute's language is ambiguous, a court often must venture into extratextual territory in order to distill an appropriate construction. Absent explicatory legislative history for an ambiguous statute . . . this Court is obligated to consider the . . . overarching design of the statute." *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc*., 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995).

The disputed language in West Virginia Code § 24-2-1(b)(6) implicates two concerns: (1) that the PSC resolve such disputes expeditiously, and (2) that it have all of the necessary information it needs prior to doing so. I find that the PSC's interpretation of the statute, that the 120-day clock does not begin to run until it receives all of the necessary information, is consistent with these two concerns. Indeed, the statute expressly states that the "120-day period," not simply a portion of such time period, may be tolled. Such language indicates that the PSC's review period should only begin when the information needed for a complete review is received. The PSC's interpretation ensures that it will have the benefit of the full 120-day period to conduct a thorough review of such disputes with all of the necessary information. Conversely, under Wheeling's construction of the statute, a party could hold back necessary information while the 120-day clock is running, thus depriving the PSC of the full review period provided for in the statute. Allowing a party to engage in this theoretical type of gamesmanship has the potential to prolong these

4

disputes and to deprive the PSC of sufficient time to conduct its review. This Court has provided that "[t]he judicial system of this State is not designed to promote 'footloose' tactics by litigants that lead to 'gotcha' justice. Our system is designed to dispense justice based upon truth-seeking fair and impartial proceedings." *W. Va. Dept. of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 507, 618 S.E.2d 506, 516 (2005).[1]

Additionally, because West Virginia Code § 24-2-1(b)(6) is ambiguous, substantial deference should be given to the PSC's interpretation of the statute. This is because "the rulings, interpretations and opinions" of the PSC "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Appalachian Power Co.*, 195 W. Va. at 583, 466 S.E.2d at 434 (1995) (citations omitted). Therefore, "this Court gives substantial deference to the PSC's construction of a statute." *Sierra Club v. Pub. Serv. Comm'n of W. Va.,* 241 W. Va. 600, 613, 827 S.E.2d 224, 237 (2019). *See also Security Nat'l Bank & Trust Co. v. First W. Va. Bancorp, Inc.,* Syl. Pt. 4, 166 W. Va. 775, 277 S.E.2d 613 (1981) ("Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.").

Based on the foregoing, I respectfully dissent from the majority opinion's holding that the 120-day dispute resolution period in West Virginia Code § 24-2-1(b)(6) begins on the date a request for investigation is filed with the PSC. Instead, I would have

---

[1] The majority opinion aptly notes that Wheeling did not object to the dispute resolution deadline set by the PSC on October 26, 2021. Instead, Wheeling waited to raise its argument that the 120-day deadline had passed until after the PSC entered its November 12, 2021. Wheeling has not offered any compelling reason explaining why it did not immediately object to the PSC's October 26, 2021, order.

affirmed the PSC's order and determined that the 120-day deadline does not begin to run until the PSC has received all of the necessary information it needs to resolve a dispute.