IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2019 Term

**FILED**

**March 8, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 18-0509

_____

STATE OF WEST VIRGINIA ex rel. UNIVERSAL UNDERWRITERS
INSURANCE COMPANY AND ZURICH AMERICAN INSURANCE COMPANY,
Petitioners

v.

THE HONORABLE PATRICK N. WILSON, JUDGE OF THE CIRCUIT COURT OF
MARION COUNTY, WEST VIRGINIA, CHRISTINA M. VARVEL,
ADMINISTRATRIX OF THE ESTATE OF DAVID RALPH ALLEN, DECEASED,
SALVATORE CAVA, DAN'S CAR WORLD, LLC, DAN CAVA'S TOYOTA
WORLD, AND DANIEL A. CAVA,
Respondents

_____

Petition for Writ of Prohibition

WRIT GRANTED

_____

Submitted: February 5, 2019
Filed:  March 8, 2019

Arie M. Spitz, Esq.                         Dino S. Colombo, Esq.
Jill C. Rice, Esq.                          Travis T. Mohler, Esq.
Dinsmore & Shohl, LLP                       Colombo Law
Charleston, West Virginia                   Morgantown, West Virginia
Attorneys for Petitioners                   Attorneys for Respondent,
                                            Christina M. Varvel

JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.      "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syllabus point 8, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016) and *Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

2.      As a general rule, in order for the doctrine of reasonable expectations to be applicable to an insurance contract, there must be an ambiguity regarding the terms of that contract.  However, an exception to this general rule occurs when reliable and relevant evidence, extrinsic to the insurance contract, casts a reasonable doubt as to whether coverage was provided by an otherwise unambiguous policy.

3.      Pursuant to Rule 30(b)(7) of the West Virginia Rules of Civil Procedure, an organization is required to designate a deponent(s) who must testify as to

i

matters known or reasonably available to the organization that were designated for the deposition. Generally, if the deponent testifies that he or she has no information on a matter that comes within the scope of the areas designated for the deposition, the organization may not, for summary judgment purposes, proffer new or different information that could have been provided at the time of the Rule 30(b)(7) deposition. The information may, however, be proffered if the organization can show that the information was not known or was inaccessible at the time of the deposition.

4. "Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process." Syllabus point 2, *W. Va. Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 618 S.E.2d 506 (2005).

5. For summary judgment purposes, judicial estoppel may be applied against a litigant to prevent the litigant from using deposition testimony of a nonparty that is not consistent with a position taken by the deponent in a previous case, or with a position taken earlier in the same case. Application of this principle should be rare and only when the integrity of the judicial process is clearly undermined.

**Hutchison, Justice:**

This matter was brought under the original jurisdiction of this Court as a petition for a writ of prohibition, by Universal Underwriters Insurance Company and Zurich American Insurance Company (hereinafter "Petitioners").[1] The Petitioners seek to have this Court prohibit enforcement of a ruling by the Circuit Court of Marion County that denied their motion for summary judgment against the Respondent, Christina M. Varvel, administratrix of the estate of David Ralph Allen. Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we grant the writ.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On May 30, 2014, in the town of Bridgeport, West Virginia, Salvatore Cava pulled out of the parking lot of a McDonald's restaurant and collided with a motorcycle being driven by David Ralph Allen. Mr. Allen sustained injuries and was taken to a hospital. He died several days later. The car that was driven by Salvatore Cava was owned by an auto dealership called Dan's Car World. Salvatore Cava's father, Dan Cava (Mr. Cava), owned the auto dealership.[2] Petitioners provided an insurance policy for Dan's Car

---

[1] Universal Underwriters Insurance Company is a subsidiary of Zurich American Insurance Company.

[2] Mr. Cava allowed Salvatore to drive the car to attend classes at West Virginia University.

1

World. Under Part 500 of the policy, entitled Garage Operations and Auto Hazard, a limit of $300,000 in liability coverage was provided. Part 980 of the policy, entitled Commercial Umbrella, provided up to $5,000,000 in liability coverage.

In December of 2014, Respondent brought a civil action initially against Salvatore Cava and Dan's Car World. The Respondent also asserted a declaratory judgment action against Petitioners to determine the amount of insurance coverage available. The complaint was eventually amended in January of 2016, to add Mr. Cava as a defendant. The Petitioners offered to settle the matter for $300,000, the limit under the garage coverage provision of the policy. The Petitioners took the position that the umbrella coverage part of the policy did not cover the Respondent's claims against Salvatore Cava, because he was not a designated person under that provision. The Respondent rejected the settlement offer and argued that the umbrella portion of the policy provided additional liability coverage for the claims asserted against Salvatore.

In March of 2016, Mr. Cava, Salvatore Cava and Dan's Car World filed individual cross-claims against the Petitioners, asserting bad faith, breach of contract and other claims. Petitioners filed a motion to dismiss the cross-claims. The circuit court denied the motion. The Petitioners filed a writ of prohibition with this Court challenging the denial of its motion to dismiss. This Court granted Petitioners relief in that proceeding, after it was determined that the circuit court lacked subject matter jurisdiction over the

cross-claims because those claims were not ripe.[3] *See State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 801 S.E.2d 216 (2017).

After our decision in *Wilson*, the Petitioners filed a motion for summary judgment in the declaratory judgment case.[4]  Mr. Cava and Dan's Car World also filed a motion for summary judgment on the tort claims.  In an opinion letter dated May 29, 2018, the circuit court denied Petitioners' motion for summary judgment on the coverage issue.[5] The circuit court denied summary judgment based upon two dispositive factors. First, it was found that a material issue of fact was in dispute regarding the reasonable expectation of coverage for Salvatore Cava under the umbrella provision of the policy.  Second, the court found that judicial estoppel could not be invoked by Petitioners to preclude Mr. Cava from testifying about an alleged conversation he had with Petitioners' agent regarding

---

[3]The circuit court was instructed to dismiss the cross-claims without prejudice.

[4]The Petitioners also sought dismissal of the tort claims against Mr. Cava and Dan's Car World.

[5]In a separate opinion letter dated May 30, 2018, the circuit court granted the summary judgment motion of Mr. Cava and Dan's Car World on the tort claims brought by Respondent.  The opinion letter specifically stated that "for the reasons argued in the pleadings and on the record by the Cava Defendants' counsel and counsel for Zurich, Dan's Car World and Dan Cava's Motion for Summary Judgment should be, and are hereby, GRANTED."  The opinion letter directed an attorney to draft a proposed order reflecting the findings contained in the opinion letter.  The record in this proceeding does not contain an actual summary judgment order.

3

umbrella coverage for Salvatore Cava. Petitioners filed the instant matter after the circuit

court denied their motion for summary judgment in the opinion letter. [6]

## II.

### STANDARD OF REVIEW

This case comes to this Court as a petition for a writ of prohibition. We have

long held that "[t]he writ of prohibition will issue only in clear cases, where the inferior

tribunal is proceeding without, or in excess of, jurisdiction." Syllabus, *State ex rel.*

*Vineyard v. O'Brien*, 100 W. Va. 163, 130 S.E. 111 (1925). *See* Syl. pt. 2, *State ex rel.*

*Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition

---

[6]The record does not contain an actual order denying summary judgment. The opinion letter authorized one of the trial attorneys to draft an order that reflected the findings contained in the opinion letter. This does not appear to have been done before the writ was filed with this Court. Counsel for Petitioners noted during oral argument that in original jurisdiction proceedings before this Court, Rule 16(e)(1) of our Rules of Appellate Procedure provides that if a written order "has not been issued, a copy of the portion of the transcript where the decision is set forth is sufficient." The Petitioners have provided a transcript of the summary judgment proceeding. However, the trial court did not make a decision on the summary judgment motion during the hearing, as is required to invoke the transcript exception to an order under Rule 16(e)(1). Insofar as the opinion letter adequately informs this Court of the basis for the trial court's denial of Petitioners' summary judgment motion, we will exercise our discretion and treat the opinion letter as an order. *See Stone v. Stone*, 200 W. Va. 15, 19 n.9, 488 S.E.2d 15, 19 n.9 (1997) ("While we do not encourage the abbreviated type of letter opinion offered in this case, we are able to discern the basis of the circuit court's decision on this narrow issue."); *State ex rel. Spaulding v. Watt*, 188 W. Va. 96, 98, 422 S.E.2d 818, 820 (1992) (writ of prohibition filed after "the trial judge issued a letter opinion which held that the respondent was entitled to a new trial on the basis of newly discovered evidence.").

4

will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53–1–1."). In Syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996), we set forth the following standard for issuance of a writ of prohibition when it is alleged a lower court is exceeding its authority:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With the foregoing in mind, we turn to the parties' arguments.

## III.

## DISCUSSION

The Petitioners argue that the circuit court erred as a matter of law in denying their motion for summary judgment on the grounds that (1) the umbrella coverage provision of the policy was ambiguous therefore the doctrine of reasonable expectations applied, and (2) the doctrine of judicial estoppel did not apply. The Respondent takes the position, as it did below, that summary judgment was properly denied because the doctrine of reasonable expectations applied for two reasons: (1) ambiguity existed as to whether Endorsement No. 043 applied to the umbrella coverage provision; and (2) because of the conflicting evidence as to whether Petitioners' agent informed Mr. Cava that Salvatore was covered under the umbrella provision of the policy. The Respondent also argues that Petitioners failed to satisfy the elements of the doctrine of judicial estoppel.

We begin by setting out the legal principles that guide our resolution of the issue of the application of the doctrine of reasonable expectations to this case. This Court has defined the doctrine of reasonable expectations as follows:

> With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

6

Syl. pt. 8, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Parsons v. Halliburton Energy Servs., Inc.*, 237 W. Va. 138, 785 S.E.2d 844 (2016) and *Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998). We have also made clear that "[b]efore the doctrine of reasonable expectations is applicable to an insurance contract, there must be an ambiguity regarding the terms of that contract." Syl. pt. 2, *Robertson v. Fowler*, 197 W. Va. 116, 475 S.E.2d 116 (1996). "When reasonable people can differ about the meaning of an insurance contract, the contract is ambiguous, and all ambiguities will be construed in favor of the insured." Syl. pt. 1, *D'Annunzio v. Security–Connecticut Life Insurance Co.*, 186 W.Va. 39, 410 S.E.2d 275 (1991). *See* Syl. pt. 1, *Prete v. Merchants Prop. Ins. Co. of Indiana*, 159 W. Va. 508, 223 S.E.2d 441 (1976) ("Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous."). In construing the terms of a policy we have held that "[l]anguage in an insurance policy should be given its plain, ordinary meaning." *Cherrington v. Erie Ins. Prop. & Cas. Co.*, 231 W. Va. 470, 486, 745 S.E.2d 508, 524 (2013) (internal quotation marks and citation omitted). Thus, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain

meaning intended." Syllabus, *Keffer v. Prudential Ins. Co. of America*, 153 W. Va. 813, 172 S.E.2d 714 (1970).

As previously stated, the Respondent argues that the policy is ambiguous because it is not clear as to whether Endorsement No. 043 applies to the umbrella provision. The relevant language of the umbrella provision reads as follows:

> **Who Is An Insured**
>
> \*\*\*
>
> C. With respect to:
>
> 1. any AUTO or watercraft used in YOUR business; or
>
> 2. personal use of any AUTO owned or hired by YOU;
>
> any person or organization shown in the declarations for this coverage part as a
>
> Designated Person.
>
> \*\*\*
>
> **Commercial Umbrella**
>
> \*\*\*
>
> Endorsements Applicable:
>
> 0089 Umbrella Limits Inclusive
>
> 0809 Personal Property in Customer's Auto Excluded
>
> Designated Persons:
>
> Dan Cava

The quoted language from the umbrella provision of the policy is not ambiguous. It clearly only designates "Dan Cava" as an insured under the umbrella provision. The Respondent

8

contends that the language which makes the policy ambiguous is contained in Endorsement No. 043. The language in Endorsement No. 043 provides that an insured under the umbrella provision is "any of YOUR partners, paid employees, directors, executive officers, or stockholders, and members of their households." According to the Respondent Endorsement No. 043 provides umbrella coverage for Salvatore Cava because he was a member of Mr. Cava's household.

The Respondent asserts that it is unclear as to whether Endorsement No. 043 applies to the policy, therefore the policy is ambiguous. We disagree. The Petitioners point out that the type of policy issued to Dan's Car World is called a Unicover Policy. This type of policy is typically issued to auto dealerships. A Unicover Policy comprises about 200 pages that set out numerous coverage options and endorsements. According to Petitioners "[w]hen a policy is sold to a customer, a Declarations Page(s) is issued to that customer that identifies which of the coverage options and endorsements contained in the booklet the customer has purchased." The Petitioners point out that the policy purchased by Dan's Car World clearly and unambiguously sets out the Endorsements that are applicable to the umbrella provision: Endorsement No. 0089 and Endorsement No. 0809. It is clear to this Court that the Respondent has simply located an Endorsement that was not purchased by Dan's Car World and attempted to use it to argue that the policy is ambiguous. We have made clear that "[a]n insurance policy should never be interpreted

9

so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties." Syl. pt. 2, *D'Annunzio*.

The decision in *Universal Underwriters Ins. Co. v. Paradis*, 50 Conn. Supp. 486, 940 A.2d 918 (Super. Ct. 2006), aff'd, 285 Conn. 342, 940 A.2d 730 (2008) demonstrates the simplicity of reviewing an umbrella provision of a Unicover Policy to determine who is a named insured. In that case, an auto dealership's employee, Eric Paradis, was sued for causing the death of a person while driving his employer's car. The employer had a Unicover Policy that provided umbrella coverage in the amount of $10 million. The insurer filed a declaratory judgment action seeking a determination that the umbrella coverage did not apply to the employee. The trial court granted summary judgment for the insurer, which was affirmed on appeal, based upon the following reasoning:

> Crowley's unicover policy explicitly names the individual insureds for each coverage part separately. . . . Page 1–0 of the policy declarations provides in relevant part: "Umbrella (Part 980) . . . Designated Persons: Kenneth Crowley, Steven Miller, Thomas Moden, Kimberley Marie Crowley, Mark Crowley, James Brooks, Gary Stebbins, Peter Kelly, Thomas Strano, Tom Jasperson [and] Debbie Fregeau." Paradis is not listed. Our Supreme Court in *Cantonbury Heights Condominium Assn., Inc. v. Local Land Development, LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005), explained that "[a] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . [T]he mere fact that the parties

10

advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) Unambiguous contract language is given effect according to its terms. *Poole v. Waterbury*, 266 Conn. 68, 88, 831 A.2d 211 (2003). The declarations, by their terms, designate by name the business entities and individuals insured under the optional umbrella coverage. The definition of an insured for such coverage has a definite and precise meaning concerning which there is no reasonable basis for a difference of opinion. As a consequence, efforts by Lamont and the estate to assert that Paradis had umbrella coverage must fail.

*Paradis*, 50 Conn. Supp. at 493–95, 940 A.2d at 923–24.

The decision in *Paradis* is consistent with our conclusion that umbrella coverage under Petitioners' Unicover Policy is determined by a review of who has been named in the Designated Persons section of the provision. In the instant proceeding, Mr. Cava is the only person named in the Designated Persons section of the umbrella provision. There is nothing ambiguous about that designation.

Although we have determined that no ambiguity exists in the relevant language of the umbrella provision of the policy, the Respondent contends that the doctrine of reasonable expectations may still apply because of an alleged conversation between Petitioners' agent and Mr. Cava before the auto accident occurred. "[T]his Court has applied the doctrine of reasonable expectations in select cases not involving ambiguous

11

policy provisions[.]" *Cherrington*, 231 W. Va. at 493 n.43, 745 S.E.2d at 531 n.43 (2013). We have done so when reliable and relevant evidence, extrinsic to a policy, casts doubt on whether a claim was not covered by an otherwise unambiguous policy. *See New Hampshire Ins. Co. v. RRK, Inc.*, 230 W. Va. 52, 736 S.E.2d 52 (2012) (holding that a jury question was presented as to whether it was reasonable for insured to rely solely on a 17–page fax as containing all of the terms of its insurance contract and in failing to review the actual policy mailed to it on two occasions); *Costello v. Costello*, 195 W. Va. 349, 465 S.E.2d 620 (1995) (holding that conduct during the application process may have created a reasonable expectation of insurance); *Keller v. First Nat'l Bank*, 184 W.Va. 681, 403 S.E.2d 424 (1991) (finding that even though offer to insure was extended by mistake it created an expectation of coverage therefore coverage could not be denied); *Romano v. New England Mutual Life Insurance Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987) (finding unambiguous policy exclusion not applicable because promotional materials provided to the insured led him to a reasonable belief that he was covered under the policy). During oral argument counsel for Petitioners suggested that in *Erie Ins. Prop. & Cas. Co. v. Chaber*, 239 W. Va. 329, 801 S.E.2d 207 (2017) this Court implicitly disapproved of the line of cases invoking the doctrine of reasonable expectations when a policy was not ambiguous. The decision in *Erie* did not implicitly reject the principle of law recognized in those line of cases.

In *Erie* this Court merely refused to consider the exception to the ambiguity requirement under the specific facts of that case. Had the opinion intended to disapprove of the line of cases recognizing the exception to the ambiguity requirement, we would have done so expressly. In order to bring clarity to the bench and bar, we now expressly hold that as a general rule, in order for the doctrine of reasonable expectations to be applicable to an insurance contract, there must be an ambiguity regarding the terms of that contract. However, an exception to this general rule occurs when reliable and relevant evidence, extrinsic to the insurance contract, casts a reasonable doubt as to whether coverage was provided by an otherwise unambiguous policy. We must now determine whether the facts of this case fall within the narrow exception to the requirement of ambiguity to trigger the doctrine of reasonable expectations.

To start, before Mr. Cava was brought into the case as a named defendant, the Petitioners sought to depose Dan's Car World under Rule 30(b)(7) of the West Virginia Rules of Civil Procedure.[7] Dan's Car World designated its controller, Tiffany Moine, as

---

[7]Under Rule 30(b)(7) the following is set out:

> A party may in a notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth,

13

the Rule 30(b)(7) deponent for the company.[8]  During the deposition, which occurred on

June 29, 2015, Ms. Moine testified about a conversation she had with Mr. Cava regarding

policy coverage for Salvatore Cava.  The relevant part of the deposition testimony was as

follows:

> Q. All right.  Well, are you aware of any communications between Dan's Car World and Zurich or Universal that would be considered a request for coverage in addition to or separate from the coverages that are shown on this dec page?
>
> A. Yes, I am aware of a conversation.

> for each person designated, the matters on which the person will testify.  A subpoena shall advise a non-party organization of its duty to make such a designation.  The persons so designated shall testify as to matters known or reasonably available to the organization.   This subdivision does not preclude taking a deposition by any other procedure authorized in these rules.

[8] The commentators on our rules of civil procedure have summarized the role of a Rule 30(b)(7) deponent as follows:

> At a Rule 30(b)(7) deposition, the testimony elicited represents the knowledge of the organization, not that of the individual deponent. The designated witness is speaking for the organization so that his/her testimony must be distinguished from that of a mere organization employee. Rule 30(b)(7) does not require the organization's designee have personal knowledge of, or have been personally involved in, the examination topics. The rule merely requires that the designee be sufficiently prepared to give knowledgeable, complete and binding answers on behalf of the organization.

Louis J. Palmer, Jr., et al., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 30(b), at 874 (5th Ed. 2017).

14

Q. All right. Tell me about that, please.

A. After the incident, Danny had a conversation with me that he was under the--the assumption that after he spoke with a representative with Zurich at some point in time after Salvatore was needing to be put on our policy, that Danny was under the assumption that he had been added to the policy. He had this conversation with the representative to add him.

***

Q. And when was Salvatore supposed to be added to the policy.

A. That I'm not sure. I don't know.

***

Q. All right. And what communication did, I take it, Dan Cava have with Universal or Zurich in which he expressed a desire for Salvatore to be added to the policy which--which occurred prior to May of 2014?

A. He had a conversation with our representative--

Q. And who's your representative?

A. --of Zurich. At the time it would have been Scott Beresford.

***

Q. Do you know if any written correspondence was exchanged between Mr. Beresford and Dan Cava concerning adding Salvatore to the policy?

A. I do not know.

***

Q. Do you know what Mr. Beresford communicated to Dan Cava during that conversation?

A. I do not know.

***

15

Q. And what I want to know is: Did Dan Cava tell you what Scott Beresford said to him during that conversation?

A. No.

Q. Did Dan Cava tell you what he said to Scott Beresford during that conversation?

A. Yes, and I've already said that. That he was--told him that he needed to have Salvatore added to the policy because he would be driving one of our vehicles.

\*\*\*

Q. And if we want to know what Scott Beresford said to Dan Cava, we would have to ask Dan; is that correct?

A. Yes.

\*\*\*

Q. Do you know if that premium ever changed during the course of the policy?

A. No, it did not change.

\*\*\*

Q. Did Dan Cava—tell me as specifically as you can what Dan Cava told you he asked Scott Beresford to provide in terms of coverage for Salvatore.

A. He didn't tell me specifically what coverage. He told me that he told Scott Beresford—he was under the assumption that Salvatore was on the policy because he told Scott Beresford to add him, and that was when Salvatore started driving his car. Salvatore was no longer driving a—a vehicle, and he was driving one of our vehicles, and at that time he told Scott Beresford to add him.

\*\*\*

Q. And I take from your earlier testimony, though, that it's your understanding that prior to Salvatore beginning

16

to use a car that was owned by Dan's Car World, Dan Cava had a conversation with Scott Beresford in which he asked for Salvatore to be, quote/unquote, added to the policy because he was going to be driving a car owned by Dan's Car World?

A. That is my understanding.

Reduced to its essence, Ms. Moine testified that Mr. Cava told her that he asked Petitioners' agent to add Salvatore Cava to the policy. After Ms. Moine's deposition the Petitioners filed a motion to compel Dan's Car World to produce a Rule 30(b)(7) witness who could testify about what its agent said to Mr. Cava regarding adding Salvatore Cava to the policy.[9] Dan's Car World opposed the motion. In doing so, it argued, "to the extent [Dan's Car World's] representative was unaware of information sought by Zurich, that information is not available and [Dan's Car World] is bound by that response." The circuit court entered an order dated September 21, 2015, which denied the motion to compel.[10] On March 13, 2018, several years after Ms. Moine's deposition, the Respondent

---

[9]The motion also sought a witness who could testify to other matters that are not relevant here.

[10]The circuit court found that because Mr. Cava was not a party to the action, Dan's Car World could not be compelled to produce him at a deposition. We fail to understand the circuit court's reasoning. Mr. Cava owned Dan's Car World. *See* Palmer, et al., *Litigation Handbook*, § 30(b), at 873 ("The organization may designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf."); *Michelman v. Hanil Bank, Ltd*., 104 B.R. 289, 294 (Bankr.C.D.Cal.1989) ("If an entity's designated witness lacks sufficient knowledge or fails to adequately respond to the deposition requirements, the responding entity must designate additional witnesses capable of providing sufficient answers. This process was intended 'to curb the bandying by which

17

deposed Mr. Cava. During that deposition, Mr. Cava testified that Petitioners' agent told him that he did not have to add Salvatore to the policy because he was already covered under the garage provision and umbrella provision.[11]

The Respondent primarily relies upon the deposition testimony of Mr. Cava to argue that there was a reasonable expectation of coverage, even if the policy was not ambiguous.[12] However, the deposition testimony of Mr. Cava is not consistent with prior representations of Dan's Car World.[13] When the Petitioners sought to determine what its agent was supposed to have said to Mr. Cava, Ms. Moine testified that Mr. Cava did not

---

officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to the organization.' (quoting 1970 Advisory Committee Notes to Rule 30).").

[11]Petitioners' agent testified at a deposition that he did not recall having a conversation with Mr. Cava regarding adding Salvatore to the policy. The agent testified further that a specific screening procedure had to be followed before anyone was added to a policy, and that he did not have any documentation showing that process was triggered to add Salvatore.

[12]The Respondent also cites for support the testimony of Ms. Moine and Endorsement No. 043.

[13]The Respondent cites to the decision in *New Hampshire*, *supra*, and *Romano*, *supra*, as support for its reasonable expectation argument. However, both cases are distinguishable. The decision in *New Hampshire* involved a 17–page fax document that contained terms of an insurance contract that were different from the actual policy. In *Romano* it was determined that a policy exclusion was not applicable, because the insured was given promotional materials that led him to a reasonable belief that he was covered under the policy. In the instant case, there is no evidence of any documentation extrinsic to the policy that was provided to Mr. Cava that was inconsistent with the policy itself.

18

tell her what the agent said. The Respondent's attempt to rely on the deposition testimony of Mr. Cava, for information that Dan's Car World's Rule 30(b)(7) deponent could not supply, is problematic and presents two entangled issues of first impression for this Court: (1) could Mr. Cava's deposition have been used by Dan's Car World, and (2) if not, may the Respondent use it.

To begin, federal courts have addressed the issue of a corporation attempting to use evidence at the summary judgment stage that differed from the responses of its Rule 30(b)(6) witness.[14] In this context federal courts hold that at the summary judgment stage

---

[14]Rule 30(b)(6) of the federal Rules of Civil Procedure is the equivalent of our Rule 30(b)(7). *See W. Virginia Dep't of Transp., Div. of Highways v. Newton*, 235 W. Va. 267, 281 n.20, 773 S.E.2d 371, 385 n.20 (2015) ("We often look to federal decisions for guidance when our rules are similar in wording."). Under federal Rule 30(b)(6) the following is set out:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

a corporation "'is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition or contains information that the Rule 30(b)(6) deponent professed not to know.'" *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1260 (10th Cir. 2016), quoting 7 James William Moore et al., *Moore's Federal Practice*—Civil § 30.25.[15] *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 35 (2d Cir. 2015) ("Some deponents will, of course, try to abuse Rule 30(b)(6) by intentionally offering misleading or incomplete responses, then seeking to 'correct' them by offering new evidence after discovery. Appropriate remedies are available for such situations."); *Daubert v. NRA Grp., LLC*, 189 F. Supp. 3d 442, 458 (M.D. Pa. 2016) ("A party may not retract prior 30(b)(6) testimony with a later affidavit, and then use that affidavit to preclude summary judgment."); *Weinstein v. D.C. Hous. Auth.*, 931 F.Supp.2d 178, 186 (D.D.C. 2013) ("In other words, if a deponent initially pleads ignorance when asked about a subject, but a declaration filed by another employee later raises 'new or different allegations that could have been made at the time of the 30(b)(6) deposition,' the later filing will not be considered."); *Hyde v. Stanley Tools*, 107 F.Supp.2d 992, 993 (E.D. La. 2000) ("Stanley should not be allowed to defeat Hyde's motion for summary judgment based upon its self-serving abuse of a Rule 30(b)(6) deposition.").

---

[15]*See also Wilson v. Lakner*, 228 F.R.D. 524, 530 (D. Md. 2005) ("Additionally, depending on the nature and extent of the obfuscation, the testimony given by the non-responsive deponent (e.g. 'I don't know') may be deemed 'binding on the corporation' so as to prohibit it from offering contrary evidence at trial.").

The decision in *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F.Supp.2d 82 (D.D.C. 1998) illustrates the federal position regarding an organization using testimony by a non-Rule 30(b)(6) deponent to provide testimony that its Rule 30(b)(6) witness failed to provide. In *Rainey*, a former employee brought an action for declaratory judgment, seeking a determination as to whether the defendant improperly classified her so to as exempt her from receiving overtime pay. During discovery the defendant designated two Rule 30(b)(6) deponents. One of the deponents had no knowledge of the plaintiff's work, and the second deponent did not have knowledge of many issues related to plaintiff's employment. After the plaintiff moved for partial summary judgment, the defendant submitted an affidavit from plaintiff's former supervisor which disclosed information that was not provided by the Rule 30(b)(6) deponents. The district court rejected the affidavit as follows:

> [P]laintiff reads Rule 30(b)(6) as precluding defendant from adducing from Ms. Kurtz a theory of the facts that differs from that articulated by the designated representatives. Plaintiff's theory is consistent with both the letter and spirit of Rule 30(b)(6). First, the Rule states plainly that persons designated as corporate representatives "shall testify as to matters known or reasonably available to the organization." Fed.R.Civ.P. 30(b)(6). This makes clear that a designee is not simply testifying about matters within his or her own personal knowledge, but rather is "speaking for the corporation" about matters to which the corporation has reasonable access. By commissioning the designee as the voice of the corporation, the Rule obligates a corporate party "to prepare its designee to be able to give binding answers" in its behalf. Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that

21

could have been made at the time of the 30(b)(6) deposition.

*Rainey*, 26 F. Supp. 2d at 94 (citations omitted). *See United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996) ("Therefore, if a party states it has no knowledge or position as to a set of alleged facts or area of inquiry at a Rule 30(b)(6) deposition, it cannot argue for a contrary position . . . without introducing evidence explaining the reasons for the change.").

In light of the above federal authorities, we now hold that pursuant to Rule 30(b)(7) of the West Virginia Rules of Civil Procedure, an organization is required to designate a deponent(s) who must testify as to matters known or reasonably available to the organization that were designated for the deposition. Generally, if the deponent testifies that he or she has no information on a matter that comes within the scope of the areas designated for the deposition, the organization may not, for summary judgment purposes, proffer new or different information that could have been provided at the time of the Rule 30(b)(7) deposition. The information may, however, be proffered if the organization can show that the information was not known or was inaccessible at the time of the deposition.[16]

_____

[16]The principle of law contained in our holding is similar to the "sham affidavit" rule adopted by this Court in syllabus point 4 of *Kiser v. Caudill*, 215 W. Va. 403, 405, 599 S.E.2d 826, 828 (2004) as follows:

> To defeat summary judgment, an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained. To

22

Insofar as our holding involves a Rule 30(b)(7) deponent, we apply it to the deposition testimony of Ms. Moine. As we previously indicated in this opinion, Dan's Car World designated Ms. Moine as its Rule 30(b)(7) deponent. Ms. Moine testified that Mr. Cava told her that he asked Petitioners' agent to add Salvatore Cava to the policy. However, when asked how the agent responded to Mr. Cava's request, Ms. Moine testified several times that she did not know. In response to Petitioners' motion to compel Dan's Car World to produce a Rule 30(b)(7) witness who could answer the question, Dan's Car World stated that the information was not available. Several years later Mr. Cava testified at a deposition, called by the Respondent, that Petitioners' agent informed him that Salvatore Cava was already covered under the garage provision and umbrella provision of the policy. Nowhere

> determine whether the witness's explanation for the contradictory affidavit is adequate, the circuit court should examine: (1) Whether the deposition afforded the opportunity for direct and cross-examination of the witness; (2) whether the witness had access to pertinent evidence or information prior to or at the time of his or her deposition, or whether the affidavit was based upon newly discovered evidence not known or available at the time of the deposition; and (3) whether the earlier deposition testimony reflects confusion, lack of recollection or other legitimate lack of clarity that the affidavit justifiably attempts to explain.

Unlike the rule we have adopted when an organization seeks to qualify the testimony of a Rule 30(b)(7) deponent, the sham affidavit rule requires new information "contradict" a deponent's prior testimony. The principle of law adopted for Rule 30(b)(7) does not require the new information be contradictory.

23

in the record does it show that at the time of Ms. Moine's deposition, this information was not known or was inaccessible to Mr. Cava as owner of Dan's Car World. Under these set of facts, if Dan's Car World were still a party to this proceeding, it would not be able to offer the new information provided by Mr. Cava's deposition to defeat summary judgment.[17] The issue we must now resolve is whether the Respondent should be allowed to use Mr. Cava's deposition testimony to show a reasonable expectation of coverage, when Dan's Car World would be prohibited from using that same testimony to defeat Petitioners' summary judgment motion. Resolution of this issue is found in the doctrine of judicial estoppel.

The Petitioners argue that Mr. Cava's testimony should be precluded under the doctrine of judicial estoppel.[18] The Respondent contends that the Petitioners cannot

---

[17]The Respondent contends that Mr. Cava's deposition was taken in his individual capacity, not as the owner of Dan's Car World, therefore he should not be bound by any representations made by the Rule 30(b)(7) deponent. We reject this argument. The testimony that is critical here occurred during an alleged conversation Mr. Cava had as owner of Dan's Car World with Petitioners' agent. The fact that the Respondent seeks to portray Mr. Cava as acting in his individual capacity during the deposition is of no moment, because Mr. Cava was conveying information he allegedly obtained in his capacity as owner of Dan's Car World. Moreover, that information only has relevancy because it was obtained while he was acting as the owner of Dan's Car World.

[18]The Petitioners' brief actually invokes the judicial estoppel doctrine against Dan's Car World, not the Respondent. However, as previously mentioned, Dan's Car World was granted summary judgment and is not part of this proceeding. Petitioners' brief states clearly that "[t]he case is currently set for trial, on both the coverage dispute against [Petitioners] and the tort claims against Salvatore Cava[.]"

satisfy the elements of judicial estoppel adopted by this Court in *W. Va. Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 618 S.E.2d 506 (2005).

We begin by observing that the doctrine of judicial estoppel has been explained as follows:

> The judicial estoppel doctrine generally prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding or the same proceeding. The purpose of the doctrine is to protect the integrity of the judicial process, by prohibiting a party from deliberately changing positions according to the exigencies of the moment.

---

In the final analysis, we are not concerned with the erroneous application of the doctrine by the Petitioners in their brief, because the doctrine may be raised *sua sponte* by this Court. *See Larry V. Faircloth Realty, Inc. v. Pub. Serv. Comm'n of W. Virginia*, 230 W. Va. 482, 740 S.E.2d 77, 82 (2013) ("We have invoked judicial estoppel, *sua sponte*[.]"); *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 530 (5th Cir. 2000) ("[B]ecause [judicial estoppel] protects the judicial system ... we can apply it *sua sponte* in certain instances."); *Bethesda Lutheran Homes & Servs. v. Born*, 238 F.3d 853, 858 (7th Cir. 2001) (the doctrine of judicial estoppel "is for our protection as well as that of litigants, and so we are not bound to accept a waiver of it"); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996) ("Because [judicial estoppel] is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion."); *Eilber v. Floor Care Specialists, Inc.*, 294 Va. 438, 444, 807 S.E.2d 219, 222 (2017) ("In fact, one court has even said that it not only has the right, but also an independent duty, to raise judicial estoppel *sua sponte* to protect the integrity of the judicial system independent of the interests of the parties.") (internal quotations and citations omitted).

Palmer, et al., *Litigation Handbook*, § 8(c), at 235. *See Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir. 1993) ("Unlike its related counterparts—collateral estoppel, which prevents repetitive litigation, and equitable estoppel, which prevents contracting parties from asserting contradictory positions to ensure fairness between them—judicial estoppel is designed to preserve the dignity of the courts and insure order in judicial proceedings."); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) ("Unlike equitable estoppel, judicial estoppel may be applied even if detrimental reliance or privity does not exist. This distinction reflects the difference in the policies served by the two rules. Equitable estoppel protects litigants from less than scrupulous opponents. Judicial estoppel, however, is intended to protect the integrity of the judicial process."). In syllabus point 2 of *Robertson* we set out the following test for establishing judicial estoppel:

> Judicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.

*See Grove v. State ex rel. Black*, No. 17-0083, 2018 WL 2174128, at \*4–5 (W. Va. May 11, 2018) (Memorandum Decision) ("We conclude that the doctrine of judicial estoppel is not applicable here because all of the required elements are not satisfied.").

The general test for establishing judicial estoppel that we outlined in *Robertson* does not fit the situation that we face under the facts of this case.[19] This, however, does not preclude further consideration of the doctrine. It has been correctly noted by the United States Supreme Court that "the circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation." *New Hampshire v. Maine*, 532 U.S. 742, 743, 121 S. Ct. 1808, 1810, 149 L. Ed. 2d 968, 973 (2001). In the context of the instant case, we are called upon to determine the application of judicial estoppel against the Respondent for conduct engaged in by Mr. Cava and his company, Dan's Car World. Federal courts have addressed the issue of a litigant being bound by the conduct of another litigant, in the context of judicial estoppel. The federal approach has been summarized as follows:

> Judicial estoppel looks to the connection between the litigant and the judicial system, not the relationship between the parties to the prior litigation. Because the doctrine of judicial estoppel is intended to protect the courts, we are particularly mindful that the [i]dentity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different; and parties nominally different may be, in legal

---

[19]The judicial estoppel principle of law recognized in *Robertson* may only estop the party who actually benefited from a prior inconsistent position, not a nonparty.

27

> effect, the same. While it is true that a new party should generally not be punished for another party's unseemly conduct, there are circumstances in which it is fair to bind a nonparty to another party's actions. To protect the integrity of the judicial process, a court needs freedom to consider the equities of an entire case.

*Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*, 281 F. Supp. 3d 967, 983 (C.D. Cal. 2017) (internal quotation marks and citations omitted). *See Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir.1993) ("Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first."); *Schuring v. Cottrell, Inc.*, 2015 WL 9850317 (N.D. Illinois. September 29, 2015) ("Only in 'unusual circumstances' is it equitable to attribute the actions of a non-party to a party for the purposes of judicial estoppel."); Rand G. Boyers, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw. U. L. Rev. 1244, 1262 (1986) ("The courts should reserve the doctrine of judicial estoppel for parties' attempts to contradict positions they asserted either as parties or nonparty witnesses in previous proceedings.").

The decision in *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785 (7th Cir. 2013) illustrates a situation in which judicial estoppel was applied against a litigant because of prior judicial conduct by a nonparty. In *Grochocinski* a bankruptcy trustee filed an action in federal court against a law firm for malpractice. The trustee argued that the law firm was negligent in causing the bankrupt debtor, CMGT, Inc., to have a

28

default judgment rendered against it in an action brought by Spehar Capital.[20]  The law firm filed a motion for summary judgment.  The district court granted the motion on the grounds that the doctrine of judicial estoppel barred the inconsistencies in the suit, and the prior action by Spehar Capital against CMGT.  The Seventh Circuit affirmed. In doing so, the opinion set out the following relevant facts and law:

> Shortly after Grochocinski was appointed trustee of CMGT's estate, Spehar Capital approached him about bringing a malpractice action against CMGT's attorneys, Given and the Mayer Brown firm. The bankrupt CMGT had essentially no assets, so Spehar Capital's only hope for recovering on the default judgment in the California suit was to convince the trustee to sue CMGT's lawyers for malpractice.
>
> \*\*\*
>
> Acknowledging that the parties to this suit are different from the California suit, the district court found this was not a per se bar because judicial estoppel is concerned solely with protecting the integrity of the courts, not the relationship between the parties to the prior litigation. The court found it appropriate to bind the trustee to Spehar Capital's prior conduct because the trustee acted at all times as a proxy for the real party in this case, [Spehar Capital]. The court then found that Spehar Capital's judgment in the California suit was inconsistent with the trustee's need to prove in the malpractice suit that Spehar Capital was never entitled to the judgment in the first place and that without this argument, the malpractice action failed as a matter of law.
>
> \*\*\*
>
> The trustee bases his appeal on a question of first impression: What showing is required to apply judicial

---

[20]CMGT had hired Spehar Capital to help it find financing.

29

estoppel to a litigant based on the litigation positions of someone else? The trustee argues that the district court erred in applying judicial estoppel by attributing to the estate Spehar Capital's previous litigation positions.

\*\*\*

Judicial estoppel is a flexible equitable doctrine that is not reducible to any general formulation of principle and accordingly does not lend itself to rigid rules. To protect the integrity of the judicial process, a court needs freedom to consider the equities of an entire case. Therefore it is appropriate for a court considering judicial estoppel effects of a non-party's conduct to engage in an equitable inquiry that turns on the specific circumstances of an individual case. With this in mind, we turn to the equities of this case.

The district court concluded that the unusual circumstances of this case made it equitable to treat the trustee and Spehar Capital as the same entity so that positions taken by Spehar Capital in the California suit would be attributed to the trustee for purposes of judicial estoppel.

\*\*\*

Based on the undisputed facts, the district court did not abuse its discretion in reaching this conclusion as a matter of its equitable judgment.

\*\*\*

The trustee also argues that judicial estoppel is inequitable here because it will unfairly prevent the innocent unsecured creditors from receiving any recovery. In other circumstances, this could be a serious concern, but it does not sway the equities in this case.

*Grochocinski*, 719 F.3d at 792-797 (internal quotation marks and citations omitted).

The decision in *Amari Co. v. Burgess*, 955 F.Supp.2d 868 (N.D. Ill. 2013) applied judicial estoppel to deny a motion for summary judgment filed by the defendants. The plaintiffs in *Burgess* were sixteen businesses that sued three defendants, owners of several consulting companies referred to as IPA. The plaintiffs alleged that the defendants engaged in racketeering activity that swindled them into buying expensive, but worthless business management and tax consulting services. Shortly after the plaintiffs filed their action in federal court, IPA filed numerous actions in an Illinois state court against numerous businesses, including some of the plaintiffs in the *Burgess* action. The plaintiffs in the *Burgess* action filed a motion to stay the state court proceeding, pending the outcome of their federal case. The *Burgess* plaintiffs contended that IPA and the defendants in their action were the same, because IPA was owned by the *Burgess* defendants. IPA argued that it was not the same *Burgess* defendants and that the *Burgess* defendants were not named as parties in IPA's state court case. The state court agreed and denied the motion to stay. Ultimately IPA was able to obtain a judgment against many of the businesses in the state court action. Subsequent to the resolution of the state court cases, the defendants in *Burgess* moved for summary judgment. In doing so the defendants argued that they and IPA were one and the same, therefore res judicata prevented the federal action from proceeding further. The district court rejected the res judicata argument and held that judicial estoppel precluded the defendants from arguing that they and IPA were the same:

> In state court, where IPA and its affiliates were angling
> for speedy judgments on their collection claims
> (perhaps for the very purpose of trying to use them here
> to preclude the RICO claim), and deploring the state-

31

court defendants' motions to stay as mere delay tactics, the companies argued that they were distinct from the [three Burgess defendants]…. IPA won that argument, and as a result, its state-court suits proceeded to judgment…. Now, however, the defendants insist that they are legally the equivalent of the IPA entities, and cannot be subject to redundant litigation in this Court…. This confusing argument—without the support of any affidavit or other evidence—does not justify the about-face the [defendants] have made on this issue.

\*\*\*

Nor does it matter that the party advancing the argument in state court was IPA and here it is the [defendants]. The [defendants] received the benefit of the argument in state court; whether they were listed in the caption or not, their legal and financial interests were the same as IPA's (as they now admit). And given their current position that they are in total privity with the IPA entities, they cannot be heard to argue that judicial estoppel does not apply because a nominally different party (their corporate counterparts) succeeded on the argument in state court.

Moreover, judicial estoppel does not come into play only when a party attempts to retreat in a second case from an argument on which it prevailed in a separate earlier case; it also prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. The defendants are not only changing their story from the prior litigation, they are changing their approach to this lawsuit to date. In their answers to the amended complaint, the defendants would do no more than admit to being employed by the IPA entities. Moreover, throughout the tortured discovery in this litigation, they have taken great pains to emphasize IPA's "non-party" status, and to downplay any control over that nonparty when the plaintiffs sought written and oral discovery from the IPA entities and their employees…. In short, the [defendants] have been conducting discovery as though they do not control the IPA entities. The Court

32

> will not accept a contrary representation for purposes of this motion. The defendants are estopped from arguing that this case and the Lake County cases are between the same parties or their privies. Therefore, the defendants cannot establish the "identity of the parties" element of the res judicata inquiry.

*Burgess*, 955 F.Supp.2d at 880-881 (internal quotation marks and citation omitted). *See Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc*., 568 F.Supp.2d 1152, 1190-1191 (C.D. Cal. 2008) ("the court concludes it is appropriate, on the facts of this case, to hold that plaintiffs are judicially estopped to take a position contrary to that which their predecessors' representative took in the inheritance tax proceedings.").


The decision in *American Transp. Grp. LLC v. California Cartage Co., LLC*, 168 F.Supp.3d 1074 (N.D. Ill. 2016) applied the doctrine of judicial estoppel to prevent a litigant from asserting inconsistent liability theories in different lawsuits. The plaintiff in *American* initially sued a transport carrier, ACH Express, for losing two shipments of copper cathodes. ACH Express failed to answer the complaint. The plaintiff moved for default judgment and submitted an affidavit from one of its management employees. The affidavit stated that the two shipments of copper cathodes were tendered to ACH Express and that ACH Express acknowledged receipt of the shipments, but failed to deliver them. The federal district court entered default judgment against ACH Express. A few months after the plaintiff in *American* filed the action in federal court against ACH Express, it filed another action in the same court against two warehouse companies. In the second suit the plaintiff in *American* alleged that the two defendants failed to deliver the two shipments of

33

copper cathodes to ACH Express. After the two defendants learned that the plaintiff obtained a judgment against ACH Express for the same two shipments of copper cathodes, they moved for summary judgment. The defendants argued that the doctrine of judicial estoppel precluded any claim by the plaintiff that was inconsistent with its prior representations about what happened to the shipments of copper cathodes. The district court granted summary judgment based upon the following:

> Unlike res judicata or other preclusion doctrines ..., judicial estoppel relates to the federal courts' ability to protect themselves from manipulation.... The purpose is to protect the integrity of the judicial process.
>
> Simply stated, under the doctrine of judicial estoppel, a party who prevails on one ground in a prior proceeding cannot turn around and deny that ground in a later proceeding. The principle is that if you prevail in Suit # 1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events.
>
> ***
>
> [Plaintiff] is also off-base in suggesting that judicial estoppel should not apply because these defendants were not parties to the prior case and the judgment "had no affect [sic] or impact upon" them. Judicial estoppel is about protecting the courts from manipulation, not protecting the interests of particular parties. Identity of the parties is not required. Judicial estoppel may be raised by any party, regardless of whether the party was prejudiced by the inconsistency, or by the court on its own motion. [Plaintiff] can rest assured that this Court would have raised the issue *sua sponte* had the defendants not done so.
>
> [Plaintiff] is right about one thing: Judicial estoppel is an equitable doctrine designed to prevent unfairness and inequitable conduct. And that is what it does here in barring [plaintiff's] attempt to secure a second judgment, relating to the same loss, based on irreconcilable positions. That [plaintiff] might be out $283,000 is a direct result of its

34

deliberate litigation strategy—simultaneously pursuing factually inconsistent claims in two lawsuits and failing to act upon learning the "real" version of events—and not any action by the Court or the defendants. [Plaintiff's] effort to have it both ways, by obtaining one judgment based on [ACH Express'] failure to deliver shipments and then pursuing another judgment for the same loss under a theory that [ACH Express] never received the shipments, is the reason that judicial estoppel is even available as a defense in this case. Application of the doctrine is completely appropriate here, and the Court has no sympathy for [plaintiff's] cries of unfairness.

*American*, 168 F.Supp.3d at 1078-1082 (internal quotation marks and citations omitted).

*See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc*., 149 F.Supp.2d 610, 613 (S.D. Ind. 2001) ("The doctrine of judicial estoppel instructs that having obtained a judgment in a case on some ground a litigant cannot turn around and in another case seek a judgment on an inconsistent ground.") (internal quotations and citation omitted).

Applying the foregoing analysis to the facts of the instant case, we now hold that for summary judgment purposes, judicial estoppel may be applied against a litigant to prevent the litigant from using deposition testimony of a nonparty that is not consistent with a position taken by the deponent in a previous case, or with a position taken earlier in the same case. Application of this principle should be rare and only when the integrity of the judicial process is clearly undermined.

In light of our holding, we believe that the doctrine of judicial estoppel should be applied to prevent the Respondent from using the deposition testimony of Mr. Cava. It

35

is true the Respondent was not the party seeking the information the Rule 30(b)(7) witness could not provide, nor was it the party resisting Petitioners' motion to compel.[21] However, the integrity of the judicial process would be undermined if we allowed Respondent to use Mr. Cava's deposition testimony in view of the unseemly conduct of Mr. Cava and his company earlier in the litigation. Dan's Car World resisted the motion to compel to obtain additional information, but later, when it was convenient, Mr. Cava decided to provide the information that his company said was not available and also had agreed to be bound by that assertion. The Respondent has failed to show that the information provided in Mr. Cava's deposition was not available when the motion to compel was resisted. The judicial process is designed for seeking the truth, not rewarding gamesmanship. The Respondent has articulated no legal or factual reason we should allow the Respondent to reap the benefits of the outrageous conduct of Mr. Cava and his company. Consequently, the record in this case compels us to conclude that the doctrine of judicial estoppel precludes Respondent from using Mr. Cava's deposition testimony to support the application of the doctrine of reasonable expectations. *See Wilson v. Stanbury*, 118 Md. App. 209, 217, 702 A.2d 436, 440 (1997) ("If we were to hold that the doctrine [of judicial estoppel] did not apply under these circumstances, it would be hard to imagine when it would be applicable.").

---

[21]It will be noted that during the hearing on the motion to compel, counsel for Respondent did in fact state that it agreed with the position of Dan's Car World in resisting the motion.

In sum, the Respondent failed to show that the relevant language of the insurance policy was ambiguous or that information extrinsic to the policy language made the policy ambiguous. Therefore, the doctrine of reasonable expectations could not be used to defeat the Petitioners' motion for summary judgment on the umbrella coverage issue.

## IV.

## CONCLUSION

In view of the foregoing we find that the circuit court erred as a matter of law in denying the Petitioners' motion for summary judgment on the umbrella coverage issue. We therefore grant the writ and order the circuit court to enter summary judgment for the Petitioners on that issue.

Writ granted.