No. 19-1132 – *State ex rel. Justice v. King, et al*

WORKMAN, J., concurring:

FILED
**November 20, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I concur in the majority's conclusion that a writ of prohibition should not issue insofar as the Governor has demonstrated no clear right to extraordinary relief. The basis of the Governor's motion to dismiss below and request for extraordinary relief here is that the courts simply cannot become involved in whether he is violating his Constitutional obligation to "reside at the seat of government." As the majority properly demonstrates, extraordinary relief is not warranted because there is no clear legal error in the lower court's refusal to dismiss this matter at this juncture based on its expressed intention to permit factual development before ruling on the writ of mandamus. Simply stated, it is not in excess of the lower court's jurisdiction to rule on this matter—quite the contrary. It is the judiciary's solemn duty to interpret and apply our Constitutional provisions and determine compliance therewith by all arms of government, including but not limited to elected public officials.

I write separately, however, to express my disagreement with what has become an oft-repeated error of a majority of this Court to go beyond the issue presented to it and purport to determine legal issues neither properly before it nor informed by factual development below. More specifically, the instant case presented two questions: whether the circuit court is without jurisdiction to issue a writ of mandamus compelling the Governor to reside in Charleston because it presents a political question; and 2) whether

1

the Governor's exercise of "residency" is a discretionary duty not subject to mandamus. I agree with the majority's determination that the residency requirement is indeed mandatory and that it is not within the Governor's discretion to determine how best to fulfill that requirement. Moreover, I likewise agree that the lower court did not err in refusing to dismiss the petition for writ of mandamus on the basis that factual development was necessary which might better inform the issue of the Governor's compliance and the lower court's ultimate ruling. At this point, the writ simply should not issue.

Dissatisfied, however, with merely leaving the lower court to do its work, the majority embarks on an historical narrative under the guise of further examination of these fairly straightforward and succinctly determined issues. However, as even the majority reminds, "[m]andamus, in its purest form, simply requires the official to perform the duty required of him." Once the majority determined that the residency requirement is mandatory, there was nothing left for it to do except permit development of a factual record below regarding the Governor's compliance or lack thereof, as contemplated by the lower court. At no point did this petition for writ of prohibition lend itself to developing a definition for "reside" in a vacuum—and a relatively impotent one at that.

The majority's new syllabus point establishing a definition for the term "reside" is as feckless as it is imposing. As indicated, neither the lower court's ruling, nor the instant writ of prohibition asked this Court to create a definition; the petition merely asked this Court to hold that the lower court exceeded its authority when it denied

2

mandamus pending further factual development. But since it was apparently determined to do so, at a minimum the majority could have provided a definition that would do more than simply perpetuate the elastic notions of "presence" already predominating the narrative. By providing a formula that requires fulfillment of vague and still-undefined terms such as "liv[ing], *primarily*, at the seat of government" and "*principal* place of physical presence," the majority has done little to advance the ball (emphasis added). Where an opinion creates a question without any standard for answering, it "puts the [c]ourt out to sea" without "any chart for navigating." Reich, Charles A., *Mr. Justice Black and the Living Constitution*, 76 Harv. L. Rev. 673, 741 (1963).

Ruling dispositively or creating dispositive standards without factual development or even a ruling from the lower court is an error this majority seems intent on repeating. *See SER Troy Group v. Sims,* No. 20-0007, slip op. (W. Va. November 20, 2020) (Workman, J., dissenting) ("In what has become a disturbingly regular occurrence, the majority has substituted itself as lower court judge and jury, engaging in fact-finding and applying its factual determinations to render a determination the lower court declined—all under the auspices of extraordinary relief."); *Goodwin v. Bd. of Educ. of Fayette Cty.,* 242 W. Va. 322, 331, 835 S.E.2d 566, 575 (2019) (Workman, J., dissenting) ("Once again, under the guise of appellate review, the majority resolves issues which are underdeveloped below and in so doing renders this Court an adjudicatory body." (footnote omitted)); *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 241 W. Va. 335, 355, 825 S.E.2d 95, 115 (2019) (Workman, J., dissenting) (encouraging "full processing of a . .

3

. legal issue by its being fully considered by a lower court, a lower court making a ruling, the parties then briefing and arguing the issue at the appellate level"); *State ex rel. Gallagher Bassett Servs., Inc. v. Webster*, 242 W. Va. 88, 99, 829 S.E.2d 290, 301 (2019) (Workman, J., concurring in part and dissenting in part) (discouraging premature resolution of "legal issues that hinge on facts" in prohibition). It bears reminding that "the cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more — counsels us to go no further." *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part).

As Justice Stevens explained:

> *This is not merely a technical defect in the Court's decision.* The unnecessary resort to a[n] [] inquiry "run[s] contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 398-99 (2010) (Stevens, J., concurring) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (emphasis added)). Furthermore,

> an appellate court must refrain from adopting a position that has not been tested "in the crucible of the adversary process[.]" Issues that are fully pled, briefed, argued, and decided in the first instance by a lower court not only provide the jurisdictional basis for appellate court review, but well-serve the process that the creators of our system foresaw. That is how our system is set up, and no matter how controversial or politically charged an issue is, that is how cases should be decided.

*Morrisey v. W. Va. AFL-CIO*, 239 W. Va. 633, 647, 804 S.E.2d 883, 897 (2017) (Workman, J., concurring in part and dissenting in part) (footnote omitted). The majority must develop some level of judicial discipline to curb its apparent eagerness to become involved in the merits of every case if this Court is to retain its proper role. As Justice Ginsburg cautioned "'[courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.'" *Greenlaw v. United States*, 554 U. S. 237, 244 (2008) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring)).

Accordingly, I respectfully concur.